*In re* ALLISON.

WITNESSES — EXAMINATION — EVIDENCE — CONSTITUTIONAL PRIVI-
LEGE—CONTEMPT.

> In a disbarment proceeding, petitioner was called as a witness
> and questioned in regard to his imprisonment and whether
> he had signed an exhibit consisting of a narrative, not made
> under oath, of his entire career, which was alleged to have
> been used by the board of pardons and the governor in the
> investigation which resulted in petitioner's conditional par-
> don.   Petitioner, on the advice of counsel, refused to answer
> the question, claiming his constitutional privilege. *Held*, that,
> as the document was not sworn to, and that on oath petitioner
> might be obliged to disclose a different state of facts, he was
> justified in refusing to answer; and the court being unable
> to determine as a matter of law that such answer would not
> tend to incriminate the witness, an order adjudging him
> guilty of contempt was improvidently entered.

Certiorari to Jackson; Parkinson, J.   Submitted Feb-
ruary 16, 1909.   (Calendar No. 23,195.)   Decided March
16, 1909.

John H. Allison was adjudged guilty of contempt in
refusing to answer certain questions in regard to his im-
prisonment in the State prison at Jackson.   Reversed.

*James J. Noon* and *N. H. Stewart*, for petitioner.

*Benjamin Williams*, Prosecuting Attorney, for the
people.

BROOKE, J.   This is a proceeding to review an order
of the circuit judge of Jackson county adjudging the
petitioner guilty of contempt in refusing to answer certain
questions put to him in the course of an examination be-
fore a commissioner, and ordering his incarceration until
said questions should be answered.

The petitioner is an ex-convict, having been convicted

in 1900 for bank robbery and sentenced to a term of 17 years at hard labor. In 1904 the petitioner escaped from Jackson prison and was at large for several years, but was finally rearrested and returned to the prison some time in 1907. On March 1, 1908, he was given a conditional pardon by the governor and pardon board of the State of Michigan, and has since said conditional pardon been residing in the city of Jackson. In the fall of 1908, Courtland P. Ducomb, Harry R. Wair, and Francis E. Lambert, committee, as plaintiffs, prosecuted charges against one Joseph E. Talbot, as defendant, in the circuit court for the county of St. Joseph, State of Indiana. In the amended complaint of said committee, it charged said Joseph E. Talbot with having aided the petitioner in his escape by furnishing to him and his fellow fugitives, Slater and Spellman, food, shelter, clothes, weapons, and money at or near the city of South Bend, Ind. In the prosecution of said complaint said committee caused a commission to issue to one Walter A. Cunningham, of the city of Jackson, and a subpoena was served upon the petitioner, Allison, requiring him to appear before said commissioner for examination. The petitioner did so appear, but before appearance consulted attorneys J. J. Noon and N. H. Stewart and was represented by them at the time of his examination before the commissioner. The members of the prosecuting committee were present in person and by counsel at said examination. After some preliminary questions were asked and answered touching the original arrest and conviction of the petitioner, he was interrogated in part as follows:

"*Q.* I will ask you whether or not you were under that sentence imprisoned in Jackson prison.

"*Mr. Noon:* I think I will say to you, Mr. Allison, that you can exercise your constitutional right to refuse to answer by advice of counsel, and if you feel that answer tends to incriminate you.

"*A.* That is my position in the matter. * * *

"*Q.* I will ask you, Mr. Allison, when, if at all, you escaped from Jackson prison after being confined?

"*Mr. Noon:* One moment, Mr. Allison. I object to that for the reason you have a right to exercise your constitutional privilege.

"*Q.* Do you still refuse to answer the question?

"*A.* Yes, sir. \* \* \*

"*Q.* Mr. Allison, did you, together with Spellman and Slater, escape from Jackson prison on or about the 9th day of August, 1904?

"*Mr. Noon:* I advise you, Mr. Allison, you may refuse to answer that question, relying on your constitutional privilege if it would tend to incriminate you.

"*Q.* Do you refuse?

"*A.* Yes, sir. \* \* \*

"*Q.* I will ask you if Slater, Spellman, and yourself did not immediately go from the State of Michigan, after escaping from Jackson prison about August 9, 1904, into the State of Indiana.

"*Mr. Noon:* Same advice, Mr. Allison.

"*Q.* Do you refuse?

"*A.* Yes, sir. \* \* \*

"*Q.* State whether or not you were near or about the premises of Theresa Hertram, commonly called 'Mother's Place,' together with Larry Spellman and Harry Slater, on or about the 12th day of August, 1904.

"*Mr. Noon:* Same advice, Mr. Allison, as to that question.

"*Q.* Do you refuse?

"*A.* Yes, sir.

"*Q.* State whether or not one of your party, Spellman, Slater, or yourself, called up John Talbot, from the Hertram place and asked him to come out and join you; that you were there and wanted to see him.

"*Mr. Noon:* I advise you, Mr. Allison, you may rely on your constitutional privilege and refuse to answer.

"*Q.* Do you refuse to answer?

"*A.* Yes, sir.

"*Q.* I ask you whether or not you are acquainted with Joseph E. Talbot of the city of South Bend.

"*Mr. Noon:* You may refuse to answer that, on my advice as counsel.

"*Q.* Do you refuse to answer?

"*A.* Yes, sir. \* \* \*

"*Q.* State whether or not John W. Talbot, at the home of Joseph E. Talbot, on the evening of August 12, 1904,

gave Larry Spellman, Slater, or yourself, two guns or re-volvers.

"*Mr. Noon:* You may refuse to answer that, Mr. Allison, for a like reason.

"*Q.* Do you refuse to answer?

"*A.* Yes, sir.

"*Q.* State whether or not John W. Talbot and Joseph E. Talbot provided you, Spellman, and Slater with clothes, which you used in exchange for the prison clothing that you wore at the time of your arrival in South Bend, on or about August 12th.

"*Mr. Noon:* You may refuse to answer that question for a like reason.

"*Q.* Do you refuse to answer?

"*A.* Yes, sir.      *   *   *

"*Q.* State whether or not John Talbot, on or about the 12th day of August, 1904, at the home of Joseph E. Talbot, gave you, meaning by 'you,' yourself, Spellman, or Slater, about $25 in money.

"*Mr. Noon:* You may refuse to answer that, Mr. Allison, if the answer tends to incriminate you with all other answers.

"*Q.* Or any sum of money?

"*Mr. Noon:* I want it to be shown when he refuses to answer it is for that reason, and that is the reason, that the answer may tend to incriminate him. That has been the ground upon which you refuse to answer each and every question, that it would tend to incriminate you.

"*The Witness:* Yes, sir.

"*Q.* State whether or not did you leave the city of South Bend on or about the 12th day of August, 1904, se-cretly, continuing your journey down through the State of Indiana.

"*Mr. Noon:* You may refuse to answer that, Mr. Allison, exercising your privilege.

"*Q.* Do you refuse to answer?

"*A.* Yes, sir; for the reason stated before.

"*Q.* (showing witness paper) I will refer to this as 'Exhibit A.' I have a document in my hand I will identify by being referred to by 'Exhibit A.' I will ask you if the signature attached to that document is your signature.

"*Mr. Noon:* You may look it over, Mr. Allison, and you may refuse to answer, if the answer will tend to in-criminate you. Take the paper and look at it. I want to say, Mr. Allison, if that paper contains anything in refer-

ence to your escape from the prison or your alleged escape from the prison, you may refuse to answer in the exercise of your constitutional privilege that it may tend to incriminate you.

"*A.* I refuse to answer that question on the ground I believe it will tend to incriminate me.

"*Q.* I will ask you whether that is your signature.

"*Mr. Noon:* That is what he refuses to answer.

"*Q.* I ask you whether that instrument marked 'Exhibit A' is not a confession made by you while confined in the Jackson prison, January 3, 1908.

"*Mr. Noon:* You may refuse to answer that, Mr. Allison, for a like reason.

"*A.* Yes, sir; I do, because I think it will tend to incriminate me.

"*Q.* I will ask you if you did not sign this instrument as your confession, stating the facts surrounding and incident to the Richland bank robbery, your conviction on the charge, your sentence and confinement in Jackson prison, your escape from Jackson prison, your going into the State of Indiana, in and about the city of South Bend, where you received assistance and aid in concealment and your escape from Joseph E. Talbot and John W. Talbot along about the 12th day of August, 1904.

"*Mr. Noon:* Same objection, Mr. Allison, and this is the exercise of your privilege.

"*A.* I shall decline to answer that question on the ground that it will tend to incriminate me."

The foregoing is but a portion of the examination of the witness, but is sufficient to indicate the character of the testimony sought from the petitioner. Upon his refusal to answer the several questions above set forth and others of a like nature, the matter was taken before the circuit judge, who, after hearing counsel for petitioner and for the committee prosecuting the disbarment proceedings, ordered the petitioner to answer the questions or stand committed to the county jail. This is the order we are asked to review.

The circuit judge in his return to the order to show cause has attached a certified copy of the petition for disbarment of Talbot in the Indiana court, and a copy of Exhibit A, the alleged confession of the petitioner, pur-

porting to have been made in January, 1908, by the petitioner after his rearrest and before his conditional pardon. An examination of the complaint filed by the committee shows that the facts touching the escape of Allison and Talbot's alleged participation therein constitute but one of 15 several specifications of wrongdoing on the part of Talbot as an attorney at law. His conviction upon any one of the specifications would apparently warrant his disbarment. Exhibit A purports to be a history of the career of the petitioner, Allison, from the time of his birth to its date, January, 1908, and it may be presumed that the statements therein contained, in some measure at least, were used by the pardon board and the governor in reaching a conclusion which resulted in the conditional pardon of the petitioner. Exhibit A is not under oath, and the statements therein contained may not all be true. Nevertheless it unquestionably had its influence upon the pardon board and the governor in determining the fate of the petitioner. Under oath the petitioner might be obliged to disclose a different state of facts than that set forth in the exhibit, and might, because of such disclosure, not only lose the benefit of his pardon, but be prosecuted as well for the escape, which, under the statute, would involve a possible penalty of three years' additional imprisonment. It is perhaps true that if, under oath, the petitioner answered the questions above quoted as counsel for the committee expected him to answer them—that is, in accordance with the contents of Exhibit A—he would not thereby tend to incriminate himself; but what authority has counsel or the court to assume that his answers would conform to the information contained in Exhibit A? Where the constitutional privilege is claimed by a witness under oath, the true rule is that it must obtain, unless the court is able to say, as a matter of law, that any direct answer to the question cannot tend to incriminate the witness. See 1 Burr's Trial, p. 244; *In re Moser*, 138 Mich. 302; *In re Mark*, 146 Mich. 714.

This, as we have endeavored to point out, is not possi-

ble in the instant case.   Petitioner was represented at the examination by competent and reputable counsel—themselves sworn officers of the law—and his position was taken deliberately under their advice and after an opportunity for consultation with them.   It cannot be supposed that they themselves would be guilty of endeavoring to obstruct the due course of justice by their counsel, and no other conclusion can be reached if the committee's counsel is secure in his position.   From what is before us, it is apparrent that the petitioner has, since his escape, while at large, and since his conditional pardon, endeavored to reform and lead a blameless life.   He should not be compelled, except upon the clearest and most convincing ground, to re-open under oath a most unsavory past, with the possible attendant result of incurring further penalty of the law.

The order requiring the petitioner to answer or stand confined will be set aside and held for naught.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.