*In the* MATTER OF BOMMARITO.

*In the* MATTER OF MASSIE.

1. WITNESSES—SELF-INCRIMINATION—DETERMINATION OF QUESTION.
   The witness himself is not the sole judge of whether his testimony will tend to incriminate himself and he must answer a question put to him unless the answer may actually tend to incriminate him, but where it is perfectly apparent that the answer cannot injure him the court should compel him to answer.

2. CONSTITUTIONAL LAW—GUARANTEES TO PARTIES UNDER SUSPICION.
   Constitutional guarantees apply to all alike and should not be withheld in the slightest degree even from those under suspicion of violation of the law (Const. 1908, art. 2, § 16).

3. WITNESSES—CONTEMPT—PRESENCE IN DETROIT—SELF-INCRIMINATION.
   Holding witness in contempt of court for his refusal to answer question, put to him on trial of others for murder for which witness had been arrested and released, as to whether he was present in Detroit on a certain date *held*, proper, since mere presence in such a large city could not tend to incriminate him any more than anyone else in the city (Const. 1908, art. 2, § 16).

4. EVIDENCE—JUDICIAL NOTICE—POPULATION OF DETROIT.
   The Supreme Court will take judicial notice of the fact that Detroit is the fourth city in size of population in the United States.

5. CONTEMPT—SUMMARY PUNISHMENT.
   Witness may be punished summarily for his refusal to answer question put to him when the answer cannot tend to incriminate him and when so punished the commitment need not specify the reason therefor, since punishment is authorized under 3 Comp. Laws 1929, §§ 13910, subd. 7, 13911.

*Habeas corpus* proceedings by Joe Bommarito and Joe Massie with accompanying writs of certiorari to Donald Van Zile, judge of the recorder's court of the city of Detroit, to obtain releases from Wayne county jail. Submitted February 5, 1935. (Calendar Nos. 38,229, 38,230.) Writs dismissed March 5, 1935.

*Max M. Silverman* (*P. J. M. Hally,* of counsel),
for petitioners.

*Harry S. Toy,* Attorney General, and *Peter J.
Monaghan, Jr.,* and *Edmund E. Shepherd,* Assistants Attorney General, for the people.

BUSHNELL, J.   We issued our writ of *habeas corpus* and ancillary writ of *certiorari* to review the
conviction of each of these defendants for contempt
of court.   The people accept the following statement of facts filed by petitioners.

One James Hayes, a gambler from Toledo, Ohio,
visited Detroit to attend the last world series and
on October 4, 1934, about 8 a. m., his body was
found in an alley north of Palmer avenue between
Cass and Second in the city of Detroit, and the
State claimed and offered evidence to show that
Hayes was shot while in the R. D. O. Club.

Subsequent thereto, Joe Massie, petitioner herein, and Joe Bommarito, were arrested and accused
by police of having committed the offense and then
released.   Again arrested and accused in the same
matter, both were placed under bonds as police witnesses, no formal complaint being entered, and the
State filed an information charging Sam Finazzo
and Tony Abate with the actual killing.

During the trial of the People *v.* Sam Finazzo
and Tony Abate, which was in progress before the
Honorable Donald Van Zile in the recorder's court
for the city of Detroit, certain evidence was introduced which tended to show that the deceased went
to the Maxine Club on the night of October 3, 1934.
The testimony further showed that the deceased met
Massie and Bommarito at the Maxine Club, and
after it closed, in company with Mr. and Mrs.
Rubenstein and Massie, drove to the R. D. O. Club.
It was further shown that when the deceased ar-

rived at the R. D. O. Club with the Rubensteins and Massie they were joined by Joe Bommarito and others, the whole crowd then occupying three tables joined together and adjacent to the dance floor in said club.

This testimony had been introduced in evidence when Joe Massie, called as a State's witness, was asked the following questions:

"*Q.*  What is your business or occupation?

"*A.*  I refuse to answer that question, your Honor.

"*The Court:*  On what ground?

"*A.*  On the ground I may incriminate myself.

"*The Court:*  I will sustain the objection.

"*Q.*  Were you in Detroit on the morning of October 4th—the night of October 3d of this year?

"*A.*  I refuse to answer that question on the grounds I may incriminate myself.

"*The Court:*  Read that question.

(Pending question read.)

"*The Court:*  I think you will have to answer that question, Mr. Massie.

"*A.*  With all due respect to your court, your honor, I refuse to answer the question on the grounds I may incriminate myself."

The jury was excused and the witness sentenced to 30 days for contempt as more fully appears from the judge's return to the writ.

To this must be added the following stipulated facts filed in amplification of the original return.

Prior to the calling of the witness, Joe Massie, in the case of the People *v.* Sam Finazzo and Tony Abate, it had been testified by previous witnesses that on the evening of October 3, 1934, the deceased Hayes visited the Maxine Club located on Vernor highway east in the city of Detroit, where he, met the witnesses Joe Massie and Joe Bommarito; that

after the Maxine Club closed, which was after midnight on the night of October 3, 1934, Hayes, in company with Joe Massie and Mr. and Mrs. Rubenstein, drove from the Maxine Club to the R. D. O. Club located on Columbia avenue in the city of Detroit. When they arrived at the said R. D. O. Club in the early morning of October 4, 1934, they were joined by Joe Bommarito, the defendant Abate, the deceased Hayes and others, all occupied three tables which were joined together in the said R. D. O. Club adjacent to the dance floor therein.

The Bommarito statement is practically identical.

The applicable rule stated by Chief Justice Marshall, 1 Burr's Trial, 244, was quoted by us in the following cases: *In re Moser,* 138 Mich. 302, 307 (5 Ann. Cas. 31); *In re Mark,* 146 Mich. 714, 717; and *People, ex rel. Moll,* v. *Danziger,* 238 Mich. 39, 51 (52 A. L. R. 136). See, also, *In re Allison,* 156 Mich. 34, and *Joslin* v. *Noret,* 224 Mich. 240. The whole matter is properly summed up in the second headnote of the *Moser Case:*

"The witness himself is not the sole judge of whether his testimony will tend to incriminate himself, but he must answer a question put to him unless the answer may actually tend to criminate him. Where it is perfectly apparent that the answer cannot injure him the court should compel him to answer."

We have already stated the question which Massie refused to answer. The one put to Bommarito was:

"Were you in Detroit on the early morning of October 4, 1934?"

We apply the test laid down by the great Chief Justice:

"When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be." 1 Burr's Trial, p. 244.

We are fully conscious that constitutional guarantees apply to all alike and should not be withheld in the slightest degree even from those under suspicion of violation of the law.* These petitioners, however, though aided by counsel, objected too soon. Admission of their presence in Detroit on the day in question could not, or even might not, incriminate them any more than any one else, also in the city on that day. Neither a "yes" nor "no" could do this, and there could be no other answer. To hold otherwise would be to ignore the population of the fourth city of our nation and be influenced in our decision by what the next question might have been.

Petitioners claim their commitment void on its face as a violation of 3 Comp. Laws 1929, §§ 13931, 13932. The commitment is authorized by 3 Comp. Laws 1929, § 13910, subd. 7, and § 13911, and *Langdon* v. *Wayne Circuit Judges,* 76 Mich. 358, 368.

The writ of *habeas corpus* is dismissed and petitioners are remanded to the custody of the sheriff of Wayne county in accordance with their respective sentences.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.

---

* Const. 1908, art. 2, § 16.