*In re* SCHNITZER.

1. WITNESSES—PRIVILEGE AGAINST SELF-INCRIMINATION.
   A witness in a one-man grand jury proceeding will be protected by his constitutional privilege against self-incrimination if there is a substantial and imminent danger of incrimination under the Federal law, but the witness himself is not the sole arbiter of the incriminating tendency of the testimony he is asked to supply (Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, § 17317).

2. SAME—CONSTRUCTION OF PRIVILEGE—CONSTITUTIONAL LAW.
   When a witness at a one-man grand jury proceeding claims privilege of not answering question put to him because answer might tend to make him a witness against himself, the court must decide whether any direct answer to the question propounded can implicate the witness, although the conclusion of the witness that such tendency is present should be given due weight in accordance with policy of construing the constitutional privilege liberally (Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, § 17317).

3. SAME—DIRECT ANSWER—CONSTRUCTION OF PRIVILEGE.
   If a direct answer to question propounded to a witness in a one-man grand jury proceeding may incriminate him, the privilege of silence must be accorded, but liberality of construction of constitutional protection against self-incrimination is not to be extended so extravagantly as to obstruct the administration of justice when an answer will not jeopardize (Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, § 17317).

4. SAME—PRIVILEGE AGAINST SELF-INCRIMINATION—ANSWER MUST REASONABLY TEND TO INCRIMINATE.
   The constitutional privilege against self-incrimination does not permit the witness arbitrarily to hide behind a fancied or intangible danger but the tendency of an answer to incriminate must be a reasonable one and may not be withheld because it might possibly under some conceivable circumstances form part of a crime (Const. 1908, art. 2, § 16).

5. Same—Privilege Against Self-Incrimination—Preliminary Inquiries.

The constitutional privilege against self-incrimination must not be asserted by a witness too soon; hence inquiries that are merely preliminary and, by themselves, have no flavor of criminality must be answered until there becomes a reasonable basis for fear (Const. 1908, art. 2, § 16).

6. Same—Privilege Against Self-Incrimination—Preliminary Inquiries—Silence.

So long as the examination of a witness is in the preliminary stages and the answers to questions propounded to him cannot injure him, his silence is contumacious and he may not invoke his constitutional privilege against self-incrimination by surmising that further questions will follow which will tend to convict him of some wrongdoing (Const. 1908, art. 2, § 16).

7. Same—One-Man Grand Jury—Gambling—Protection—Federal Income Tax Law Violation—Privilege.

In one-man grand jury proceeding for investigation into gambling, refusal of witness to answer questions as to whether he had ever paid any money to a certain person or any person for protection in the operation of a hand-book at a certain location on the ground that the answer thereto might incriminate him in the State and Federal courts was a premature assertion of his claimed privilege where he was granted immunity from State prosecution for any offense concerning which the answers might tend to incriminate him and witness claimed that the possible Federal incrimination was a matter of income tax law violation, as the fact that the question related to money which might or might not be the subject of Federal taxation does not indicate sufficient danger of revealing incriminating clues (3 Comp. Laws 1929, §§ 17217, 17220).

8. Same—Specific Question—Privilege—Next Question.

In determining whether or not the refusal of a witness to answer a specific question in a one-man grand jury proceeding was contumacious, decision should not be influenced by speculation of what might be the next question (3 Comp. Laws 1929, § 17217).

Habeas corpus by Louis Schnitzer with accompanying certiorari to Honorable Homer Ferguson, Wayne circuit judge, to obtain release from com-

mitment to county jail for contempt of court in one-man grand jury proceeding. Submitted October 4, 1940. (Calendar No. 41,285.) Writs dismissed December 11, 1940.

*P. J. M. Hally,* for petitioner.

*Chester P. O'Hara, William D. Brusstar,* and *Guy W. Jensen* (*Wendell Brown,* of counsel), *amici curiae.*

Butzel, J. We issued a writ of habeas corpus and an ancillary writ of certiorari to inquire into the validity of an order adjudging petitioner in contempt for refusing to answer questions put to him in the course of a one-man grand jury proceeding pursuant to 3 Comp. Laws 1929, § 17217 (Stat. Ann. § 28.943), "for investigation into gambling and matters in connection therewith." The question for our determination is whether his silence was "contumacious or privileged." (Cardozo, J., in *Re Doyle,* 257 N. Y. 244 [177 N. E. 489, 87 A. L. R. 418]).

Petitioner was sworn as a witness and the following question was put to him:

"Did you ever pay Hovey Cox any money?"

In declining to answer, the petitioner stated:

"Your Honor, I stand on my constitutional rights, and refuse to answer the question, because it might incriminate me in the State and Federal courts."

In accordance with 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946), he was granted immunity from prosecution for any offense concerning which the answers to the following questions might tend to incriminate him:

"Question 1: Did you at any time during the last six years pay any money to Hovey Cox for protec-

tion in the operation of a handbook at 21 Charlotte street, Detroit, Michigan?

"Question 2: Did you pay to any one connected with the Detroit police department or any law-enforcing agency in the city of Detroit and county of Wayne any money within the last six years for protection in the operation of a handbook at 21 Charlotte street, Detroit, Michigan?

"Question 3: Did you pay any one any money within the last six years for protection in the operation of a handbook at 21 Charlotte street, Detroit, Michigan?"

In the proceeding below, petitioner claimed that the possible Federal incrimination was "a matter of tax;" in his brief he states that the questions, if answered, "might and probably would constitute links in the chain of evidence liable to cause and tending to cause petitioner's indictment by the said Federal grand jury then sitting in Detroit, if petitioner had failed to return (or had falsified his return) under the Federal income tax statutes."

The Constitution of 1908 of the State of Michigan provides (art. 2, § 16):

"No person shall be compelled in any criminal case to be a witness against himself."

We discussed the entire problem of the scope of the privilege in the recent case of *In re Watson,* 293 Mich. 263, although there was some dissent because the witness was under indictment at the time he was called to testify. We held that a witness is not required to give answers "that will lead straight to Federal prosecution." The witness will be protected by his privilege if there is a "substantial and imminent danger of incrimination under Federal law. The witness himself is not the sole arbiter of the incriminating tendency of the testi-

mony he is asked to supply. *In re Moser*, 138 Mich. 302 (5 Ann. Cas. 31); *In re Mark*, 146 Mich. 714; *People, ex rel. Moll*, v. *Danziger*, 238 Mich. 39 (52 A. L. R. 136); *In re Allison*, 156 Mich. 34; *In the Matter of Bommarito*, 270 Mich. 455. "It belongs to the court to consider and to decide whether any direct answer to it can implicate the witness" (Marshall, C. J., in *United States* v. *Burr*, 1 Burr's Trial, 244, Fed. Cas. No. 14692e, 28 Fed. Cas. 38, 40), although the conclusion of the witness that such tendency is present should be given due weight in accordance with our expressed policy of giving the constitutional privilege a liberal construction. *Joslin* v. *Noret*, 224 Mich. 240; *People, ex rel. Moll*, v. *Danziger, supra*. If a direct answer to the question propounded may incriminate, the privilege of silence must be accorded. But the liberality of construction to be accorded is not to be extravagantly extended so as to obstruct the administration of justice when an answer will not jeopardize. *Mason* v. *United States*, 244 U. S. 362 (37 Sup. Ct. 621). The Constitution does not permit the witness "to arbitrarily hide behind a fancied or intangible danger" (*In re Moser, supra*). The tendency to incriminate must be a reasonable one; an answer may not be withheld because it might possibly under some conceivable circumstances form part of a crime. 8 Wigmore on Evidence (3d Ed.), p. 354, § 2260. Accordingly, the privilege must not be recalcitrantly asserted too soon. Inquiries that are merely preliminary and, by themselves, have no flavor of criminality must be answered until there becomes a reasonable basis for fear. *In the Matter of Bommarito, supra; O'Connell* v. *United States* (C. C. A.), 40 Fed. (2d) 201; *United States* v. *Flegenheimer* (C. C. A.), 82 Fed. (2d) 751; *Mason* v. *United States, supra*. In *Ex parte Irvine*, 74 Fed. 954, 960, Judge Taft wrote:

"It is impossible to conceive of a question which might not elicit a fact useful as a link in proving some supposable crime against a witness. The mere statement of his name or of his place of residence might identify him as a felon, but it is not enough that the answer to the question may furnish evidence out of the witness' mouth of a fact which, upon some imaginary hypothesis, would be the one link wanting in the chain of proof against him of a crime. It must appear to the court, from the character of the question, and the other facts adduced in the case, that there is some tangible and substantial probability that the answer of the witness may help to convict him of a crime."

See, also, *Mason v. United States, supra;* 8 Wigmore on Evidence (3d Ed.), p. 358, § 2261. So long as the examination is in the preliminary state, "The witness is not permitted to surmise that further questions will follow which will tend to convict him of some wrongdoing." (*In re Jennings,* 154 Ore. 482, 522 [59 Pac. (2d) 702]).

While it is perfectly clear that an answer cannot injure, silence is contumacious. *In the Matter of Bommarito, supra.* The entire question is ably reviewed with almost textbook completeness in *Re Jennings, supra.*

We have carefully examined the relevant Federal statutes and regulations and conclude that the privilege was asserted prematurely. The fact that the question related to money which might or might not be the subject of Federal taxation does not necessarily mean that there is sufficient danger of revealing incriminating clues. The witness may not "draw a conjurer's circle" (Holmes, J., in *United States v. Sullivan,* 274 U. S. 259 [47 Sup. Ct. 607, 51 A. L. R. 1020]) about the entire matter by the mere mention of money. Our present decision is not to be in-

fluenced by speculation of what might be the next question. *In the Matter of Bommarito, supra; In re Jennings, supra.* It will be time enough to consider it if the investigators attempt to go too far.

The writs are dismissed.

BUSHNELL, C. J., and SHARPE, BOYLES, CHANDLER, and MCALLISTER, JJ., concurred with BUTZEL, J.

WIEST, J. (*concurring*). I concur in the result on the ground stated by Judge Cardozo in *Re Doyle,* 257 N. Y. 244, 267 (177 N. E. 489, 87 A. L. R. 418):

"We put aside as remote and unsubstantial the supposed peril of exposure to prosecution for the making of false tax returns to State or Federal officers."

NORTH, J., concurred with WIEST, J.