*In re* SELIK.

1. GRAND JURY—WITNESSES—REFUSAL TO ANSWER—IMMUNITY.
    If a witness, called to testify at a so-called one-man grand jury proceeding, claims that to answer questions put to him might tend to incriminate him, the judge conducting the grand jury must then determine whether the answer might tend to incriminate the witness and, if so, either to grant the witness immunity from prosecution or uphold his refusal to answer (3 Comp. Laws 1929, § 17217 *et seq.*).

2. WITNESSES—SELF-INCRIMINATION—CONSTITUTIONAL LAW.
    The constitutional privilege against self-incrimination does not permit a witness to hide behind a fancied danger and unless the answer to a question plainly might tend to incriminate him, he must claim his constitutional privilege and afford the court an opportunity to determine the merit of his claim.

3. CONTEMPT—REFUSAL OF WITNESS TO ANSWER QUESTION—ONE-MAN GRAND JURY.

Witness who refused to answer any questions when brought before so-called one-man grand jury was in contempt of court and sentence imposed thereafter by judge sitting as circuit judge must be sustained (3 Comp. Laws 1929, § 17217 *et seq.*).

Habeas corpus by Naomi Selik to obtain release of Mike Selik from Ingham county jail with accompanying certiorari to Leland W. Carr, Ingham Circuit Judge. Submitted June 5, 1945. (Calendar No. 43,094.) Writ dismissed June 8, 1945.

*Max E. Klayman,* for plaintiff.

*Victor C. Anderson,* Prosecuting Attorney, *Kim Sigler,* Special Prosecutor and Assistant Prosecuting Attorney, and *H. H. Warner,* Special Counsel, for defendant.

BOYLES, J. On petition of the wife of Mike Selik we granted habeas corpus to inquire into the legality of his detention in the Ingham county jail, with ancillary writ of certiorari to Honorable Leland W. Carr, one of the circuit judges for Ingham county, to return the proceedings leading up to such detention. Returns to the writs have been made.

It appears that Mike Selik on April 28th of this year was sentenced by Judge Carr to be confined in the Ingham county jail for 60 days for contempt of court. The proceedings leading up to said sentence were had before the same one-man grand jury * which is referred to in *Re Slattery,* 310 Mich. 458,† under a complaint entitled:

---

* See 3 Comp. Laws 1929, § 17217 *et seq.* (Stat. Ann. § 28.943 *et seq.*).—REPORTER.

† Certiorari denied by Supreme Court of the United States, 325 U. S. 876 (65 Sup. Ct. 1553, 89 L. Ed. 1993).—REPORTER.

"In the matter of the complaint of Herbert J. Rushton, attorney general for the State of Michigan, for a judicial investigation concerning certain criminal offenses."

The circuit judge returns that said proceedings vested complete jurisdiction in respondent to investigate the matters concerning which the said Mike Selik was interrogated, and that:

"In the course of said investigation, this court had reason to believe that a conspiracy existed for the purpose of obstructing justice, in that an effort was being made by certain parties to thwart the efforts of this grand-jury proceeding, and that overt acts in the furtherance of said conspiracy to obstruct justice were committed in Ingham county. That respondent had good reason to believe, from the evidence submitted before him while conducting said investigation, that efforts had been made to intimidate certain witnesses appearing before him as such grand juror.

"That in the furtherance of said conspiracy, efforts were made to intimidate one Warren G. Hooper, a member of the senate of the State of Michigan, who had appeared before respondent, as a witness, conducting said investigation. That the said Warren G. Hooper, as such witness, had testified to certain matters affecting certain persons involved in said conspiracy. That on the 11th day of January, A.D. 1945, the said Warren G. Hooper was murdered while on his way from Lansing, Michigan, to his home in Albion, Michigan. That respondent has good reason to believe, from the evidence submitted before him as such grand juror, that the murder of said Warren G. Hooper was a part and parcel of the conspiracy to obstruct justice in preventing the said Warren G. Hooper from testifying in certain cases developed as a result of the inquiry conducted by respondent.

"That the said Mike Selik was an important witness in the course of the investigation relating to said conspiracy to obstruct justice."

Mike Selik, having been sworn as a witness before said grand jury, refused to answer any questions. At no time did Selik claim or assert that his refusal to answer questions put to him was based on the position that such answers might incriminate him, or tend to do so. Had he claimed that the answer to any question asked him might tend to incriminate him, it would then have been incumbent on the judge conducting the grand jury to decide whether the answer might tend to incriminate the witness, and, if so, either to grant the witness immunity from prosecution or uphold his refusal to answer. The witness cannot merely refuse to answer all questions and hide behind a fancied danger; and unless the answer to a question plainly might tend to incriminate the witness, he must claim his constitutional privilege and afford the judge an opportunity to determine the merit of his claim. *In re Schnitzer,* 295 Mich. 736.

Instead, the following is what occurred before the grand jury:

"*The Court:* Do you swear to tell the truth, the whole truth and nothing but the truth, so help you God?

"*Mr. Selik:* Yes, but I don't know what I am going to be asked. * * *

"*The Court:* You are brought in before the grand jury. You do not have counsel here. You are brought in here to tell what you know about certain things, and that is what we expect you to do.

"*Mr. Selik:* Well, I am not going to answer any questions.

"*The Court:* You aren't?

"*Mr. Selik:* No.

"*The Court* (to the prosecutor): You may proceed. * * *

"*Q.* Do you refuse to answer where you were on the 8th of January?

"*A.* I refuse to answer.

"*Q.* Do you refuse to answer where you were on January 7, 1945?

"*A.* I refuse to answer.

"*Q.* Do you refuse to answer where you were January 6, 1945?

"*A.* I do.

"*Q.* Do you refuse to answer where you were on the 5th of January, 1945?

"*A.* Yes.

"*Q.* Do you refuse to answer where you were on the 3d?

"*A.* I refuse to answer.

"*Q.* Do you refuse to tell Judge Carr anything about any questions that I may ask you, is that it?

"*A.* Yes.

"*Q.* You refuse to answer any and all questions that may be asked you?

"*A.* I refuse to answer any and all questions.

"*Q.* Who told you to do that?

"*A.* Nobody.

"*Q.* Why are you doing it? ·

"*A.* Because I refuse to answer.

"*Q.* *Why do you refuse to answer?*

"*A.* *Because I refuse to answer.*"

Later in the afternoon of the same day Selik was again brought before the grand jury and the following took place:

"*The Court:* Well, Mr. Selik, you have had a chance to think this matter over. Is it your desire now to persist in your refusal to answer questions put to you by the special prosecutor?

"*A.* That is right.

"*The Court:* In other words, you wish to defy the court, do you?

"*A.*  Simply refuse to answer, your Honor.

"*The Court:* Then, that is your attitude.  Mr. Selik, I am directing you to answer the questions propounded to you.

"*A.*  I refuse to answer, your Honor.

"*The Court:* You refuse to answer, notwithstanding the direction of the court to answer?

"*A.*  I refuse to answer."

The circuit judge further returns that the said Mike Selik was insolent in his demeanor, and that his attitude in general was highly contemptuous.

After the foregoing took place in the grand jury, the circuit court for the county of Ingham was convened, Judge Carr as circuit judge for said county had Selik brought before him, adjudged him to be guilty of contempt of court and imposed the sentence which Selik now seeks to have set aside.

Selik was in contempt of court and the judgment and sentence must be sustained.  See *In the Matter of Bommarito,* 270 Mich. 455; *In re Slattery, supra.* The petition for release is denied and the writ dismissed.

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.