PEOPLE *v.* HOFFA.

*In re* PRUJANSKY.

1. WITNESSES—PRIVILEGE AGAINST SELF-INCRIMINATION.

When a witness invokes the provision of the Constitution as to self-incrimination, it is incumbent on the judge conducting the examination to determine the issue and either compel the witness to answer or sustain his refusal to do so as the matter is not solely for the determination of the witness (Const. 1908, art. 2, § 16).

2. SAME—CONSTRUCTION OF PRIVILEGE.

If the court determines that a direct answer to a question put to a witness can not criminate the witness he may answer it without violating the privilege against self-incrimination, but if the answer may criminate the witness, he must be the sole judge of what his answer would be (Const. 1908, art. 2, § 16).

3. SAME—DIRECT ANSWER—CONSTRUCTION OF PRIVILEGE.

If a direct answer to question propounded to a witness in a one-man grand-jury proceeding may incriminate him, the privilege of silence must be accorded, but liberality of construction of constitutional protection against self-incrimination is not to be extended so extravagantly as to obstruct the administration of justice when an answer will not jeopardize (Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, § 17317).

4. SAME—DISCRETION OF COURT.

The determination of a judge that a witness need not answer a question put to him because it could incriminate him will

not be disturbed unless it appears that a direct answer could not have incriminated him (Const. 1908, art. 2, § 16).

5. CRIMINAL LAW—FUGITIVE WITNESS IN INTERSTATE COMMERCE—INTENT.

Intent is a material element of the Federal fugitive witness law whereby a witness travels from a State, in interstate commerce, with intent to avoid giving testimony in a criminal proceeding in which a felony is charged (18 USCA, § 408[e]).

6. EVIDENCE—INTENT.

Intent is necessarily a matter of inference from established facts.

7. CRIMINAL LAW—FUGITIVE WITNESS—INTENT—SELF-INCRIMINATION.

Where warrant in so-called one-man grand-jury proceeding specifically alleged that a certain person was one of the parties against whom felonies set forth were directed, such person's testimony on preliminary examination with reference to acts, or alleged acts, of the defendants, the nature of his acquaintance with them and if his dealings with them, could become proper matters for consideration on the matter of intent on trial of such person in the Federal court on charge of violating the fugitive witness law, hence determination of trial court that such person need not answer questions relative to such matters was not manifest error (Const. 1908, art. 2, § 16; 18 USCA, § 408[e]).

8. SAME—INTENT—EVIDENCE.

In criminal prosecutions, whenever the motive or intent of the accused is important and material, a somewhat wider range of evidence is permitted in showing such motive or intent than is allowed in support of other issues.

9. SAME—INTENT—NATURE OF EVIDENCE.

The intent or motive involved in a criminal offense may be proved by either direct or circumstantial evidence.

10. SAME—INTENT—ADMISSIBILITY OF EVIDENCE.

All evidentiary circumstances which are relative to, or tend to shed light on, the motive or intent of the defendant or which tend fairly to explain his actions are admissible in evidence against him, although they may have occurred previous to the commission of the offense.

11. SAME—INTENT—EVIDENCE—DISCRETION OF COURT.

Trial judges have a measure of discretion in allowing testimony which discloses the purpose, knowledge or design of a particular person.

12. WITNESSES—PARTIAL DISCLOSURE OF CRIMINATING FACTS.

A witness who has voluntarily answered as to material crimi-

nating facts can not then stop short and refuse further explanation, but must disclose fully what he has attempted to relate (Const. 1908, art. 2, § 16).

13. SAME—PRIVILEGE AGAINST SELF-INCRIMINATION—WAIVER.

While a witness who discloses a criminal transaction on his part without invoking his privilege against self-incrimination, waives the privilege with respect to the details and particulars of the fact or transaction disclosed, the testimony of one charged in Federal court under fugitive witness act as to his name, place of residence, nature and location of his business, did not constitute a waiver of privilege on preliminary examination in felony prosecution of others in State court (Const. 1908, art. 2, § 16; 18 USCA § 408 [e]).

14. SAME—PRIVILEGE AGAINST SELF-INCRIMINATION—WAIVER.

Where the questions which judge, conducting preliminary examination, refused to compel a witness to answer because answers might have incriminated such witness, were clearly not designed to clarify, or otherwise affect, the testimony such witness had previously given without objection, the previous testimony did not constitute a waiver of the constitutional privilege against self-incrimination (Const. 1908, art. 2, § 16).

Appeal from Recorder's Court of the City of Detroit; Groat (Gerald W.), J. Submitted January 16, 1947. (Docket No. 87, Calendar No. 43,605.) Decided October 13, 1947.

James R. Hoffa, Orrin A. DeMass and James J. Stewart were charged with criminal conspiracy to obtain money from Herman Prujansky and others by false pretenses, with attempt to do so and with attempted larceny of the money by trick. From order refusing to compel witness Herman Prujansky to answer certain questions, the people appeal. Affirmed.

*Eugene F. Black*, Attorney General, *Edmund E. Shepherd*, Solicitor General, and *Lester S. Moll*, *Harrison T. Watson* and *Samuel L. Travis*, Special Assistants Attorney General, for the people.

*Donald B. Frederick,* for witness Prujansky.

CARR, C. J.  This case resulted from a one-man grand-jury inquiry, conducted in Wayne county by the Hon. George B. Murphy, one of the circuit judges of said county.  The proceeding was instituted May 14, 1946, on the petition of the prosecuting attorney of said county.  Following the examination of a number of witnesses, including the appellee Herman Prujansky, the circuit judge, under date of September 7, 1946, issued a warrant against defendants Hoffa, DeMass and Stewart. The first count of said warrant charged the offense of criminal conspiracy to obtain a certain sum of money, by means of false pretenses, from Prujansky and other named persons.  The second count charged an attempt to obtain said sum from Prujansky and others by such means; and the third count charged the attempted larceny of the money by trick.  The warrant was certified by the clerk of the Wayne circuit court to the recorder's court of the city of Detroit for proceedings thereon.

Under date of October 16, 1946, an indictment was returned by a grand jury to the United States district court for the eastern district of Michigan, southern division, charging Herman Prujansky with a violation of the United States criminal code, chapt 302, 48 Stat. at L. 782, as amended August 2, 1946, chap. 735, 60 Stat. at L. 789 (18 USCA, § 408 [e]).  It was alleged therein that on or about August 8, 1946, Prujansky traveled in interstate commerce from Detroit to California with intent to avoid giving testimony in a criminal proceeding, then pending in the circuit court for Wayne county, State of Michigan, wherein the commission of a felony was charged.  Following the filing of the indictment in the Federal court, Prujansky returned

to Michigan. The warrant issued by Judge Murphy was duly served on the defendants named therein, the date for the preliminary examination was fixed, and Prujansky was subpoenaed as a witness for the people. At such examination, held before Hon. Gerald W. Groat, one of the judges of the recorder's court for the city of Detroit, after other witnesses had been called and examined, Prujansky was questioned by a special assistant attorney general on behalf of the people. After testifying as to his name, residence, nature of business, and place of business, he refused to answer certain other questions, 12 in number, concerning his acquaintance with the defendants in the case; whether he had talked to any of the defendants during the period between October 29, 1945, and January 10, 1946; whether he had been in the offices of any of the defendants; whether the license for the business conducted by the witness was in his name; whether such license had ever been revoked; whether he had presented a watch to defendant Stewart; and whether he had taken the sum of $2,000 belonging to the witness and his partners to the office of defendant Hoffa at any time between October 29, 1945, and January 10, 1946. The refusal to answer was predicated on article 2, § 16 of the State Constitution, the witness claiming that his answers might tend to incriminate him. Apparently the claim had reference to the case pending against the witness in the Federal court wherein he was charged with traveling from this State in interstate commerce with intent to avoid giving testimony in a criminal proceeding then pending in the circuit court for Wayne county. Judge Groat sustained the refusal of the witness to answer the questions and entered an order accordingly, reciting therein the court's conclusion "that the answers to the aforesaid ques-

tions would tend to prove that he was a material witness in the above-entitled cause, and that the answers thereto might tend to incriminate him in the aforesaid criminal prosecution in the United States district court.'' From such order an appeal has been taken by the people, leave therefor having been granted.

As before noted, the indictment returned against Prujansky in the Federal court charged that the offense therein set forth was committed on or about August 8, 1946. Said date preceded by approximately one month the issuance of the warrant against defendants Hoffa, DeMass and Stewart. Appellant contends that the ''criminal proceeding'' pending in the circuit court for the county of Wayne, referred to in the Federal charge against Prujansky, must be deemed to be the grand-jury inquiry pending before Judge Murphy. The record does not indicate any other proceeding of the character stated. It may be inferred, in consequence, that appellant's contention is correct.

The principal question at issue in the case is whether the answers to the questions, to which the witness declined to reply, might have tended to incriminate him in the case pending against him in the Federal court. The witness having invoked the protection of the provision of the Constitution above cited, it was incumbent on the judge conducting the examination to determine the issue and either compel the witness to answer or sustain his refusal to do so. The matter was not solely for the determination of the witness.

Chief Justice Marshall in *United States* v. *Burr* (Case No. 14692e), 25 Fed. Cas. p. 38, 40, 1 Burr's Trial, 244, referring to the right of a witness to refuse to incriminate himself, stated the rule in the following language:

"When a question is propounded, it belongs to the court to consider and to decide, whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would be. The court can not participate with him in this judgment, because they can not decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this statement of things, that if the question be of such a description, that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would criminate himself, the court can demand no other testimony of the fact."

The foregoing statement was quoted with approval in the case of *In re Moser,* 138 Mich. 302, 306 (5 Ann. Cas. 31), where it was said:

"The witness himself is not the sole judge of whether an answer to a question will tend to criminate himself. The due administration of the law does not permit him to arbitrarily hide behind a fancied or intangible danger to himself. It gives him no right to attempt to avert real danger from others, no matter how closely he may be associated with them. Unless the answer to the question may tend to criminate himself, he must answer, whatever the consequence may be to others; otherwise the administration of justice would be seriously obstructed.

"The position on behalf of the petitioner appears to be that the witness himself is the sole judge, and that, when he says the answer may tend to criminate

him, the controversy is closed. The Constitution vests in the witness no such arbitrary power, and we are cited to no decision which goes to that extent.''

Likewise, in *Re Allison,* 156 Mich. 34, 39, the Court citing *In re Moser, supra,* said:

''Where the constitutional privilege is claimed by a witness under oath, the true rule is that it must obtain, unless the court is able to say, as a matter of law, that any direct answer to the question can not tend to incriminate the witness.''

See, also, *In re Mark,* 146 Mich. 714; *People, ex rel. Moll,* v. *Danziger,* 238 Mich. 39 (52 A. L. R. 136); *In re Bommarito,* 270 Mich. 455. The foregoing cases were cited in the case of *In re Schnitzer,* 295 Mich. 736, where the Court, after referring to the rule laid down by Chief Justice Marshall in *United States.* v. *Burr, supra,* said:

''If a direct answer. to the question propounded may incriminate, the privilege of silence must be accorded. But the liberality of construction to be accorded is not to be extravagantly extended so as to obstruct the administration of justice when an answer will not jeopardize. *Mason* v. *United States,* 244 U. S. 362 (37 Sup. Ct. 621, 61 L. Ed. 1198). The Constitution does not permit the witness 'to arbitrarily hide behind a fancied or intangible danger' (*In re Moser, supra*). The tendency to incriminate must be a reasonable one; an. answer may not be withheld because it might possibly under some conceivable circumstances form part of a crime.''

It is apparent from the language of the order entered by Judge Groat, from which the appeal has been taken, that he concluded on the basis of the record before him that the answers to the questions which Prujansky declined to answer, might tend to incriminate him in the case pending in the Federal

court. Such conclusion may not be disturbed unless it appears that Prujansky could not, had he answered the questions directly, have incriminated himself.

The statute on which the Federal indictment against Prujansky is based refers, in terms, to traveling from any State, in interstate commerce, with intent to avoid giving testimony in a criminal proceeding in which a felony is charged. Intent is, in consequence, a material element. The indictment against Prujansky specifically charges such intent on his part. The questions asked of Prujansky on the preliminary examination before Judge Groat had reference to his acquaintance with the defendants in the case, to visits that he may have made to their respective offices, to possible conversations with them, and suggested dealings that he may have had with defendants Stewart and Hoffa. The queries with reference to the license of the business place that the witness operated, in conjunction with others, presumably rested on the theory that the defendants, or some of them, were concerned in the matter. Otherwise the subject referred to may scarcely be regarded as material in the case against defendants.

May it be said that if the witness had answered the questions in such manner as to indicate acquaintance, conversations, and dealings with the defendants, such answers would not have tended to incriminate him because of their bearing on the intent with which he left the State of Michigan? Such answers might well have suggested a reason or motive for reluctance on his part to give testimony before Judge Murphy with reference to possible criminal acts committed by defendants. As before noted, the warrant against defendants issued by Judge Murphy in the course of his grand-jury in-

vestigation specifically alleged that Prujansky was one of the parties against whom the offenses set forth were directed. Intent is necessarily a matter of inference from established facts. In determining the question whether Prujansky left the jurisdiction in order that he might not be required to give testimony with reference to acts, or alleged acts, of the defendants, the nature of his acquaintance with them, and of his dealings with them, may become proper matters for consideration on the trial in the Federal court. His state of mind at the time he left the State of Michigan, and the reasons prompting his action, together with all other attendant facts and circumstances tending to throw light on the issue of intent, may be material subjects for inquiry.

In 20 Am. Jur. p. 316, it is said:

"In criminal prosecutions, whenever the motive or intent of the accused is important and material, a somewhat wider range of evidence is permitted in showing such motive or intent than is allowed in support of other issues; otherwise, there would often be no means to reach and disclose the secret design or purpose of the act charged, in which the very gist of the offense may consist. Such intent or motive may be proved by either direct or circumstantial evidence. All evidentiary circumstances which are relative to, or tend to shed light on, the motive or intent of the defendant or which tend fairly to explain his actions are admissible in evidence against him, although they may have occurred previous to the commission of the offense."

In referring to an analogous subject it was said in *Glasser* v. *United States,* 315 U. S. 60, 81 (62 Sup. Ct. 457, 86 L. Ed. 680):

"Trial judges have a measure of discretion in allowing testimony which discloses the purpose, knowledge, or design of a particular person. *Butler*

v. *United States* (C. C. A.), 53 Fed. (2d) 800; *Simpkins* v. *United States* (C. C. A.), 78 Fed. (2d) 594, 598.''

On the subject of proving intent by reference to the facts and circumstances surrounding the transaction involved see *Bentley* v. *Caille;* 289 Mich. 74; *Farrell* v. *Paulus,* 309 Mich. 441; *Brydges* v. *Emmendorfer,* 311 Mich. 274.

In *People* v. *Kert,* 304 Mich. 148, there was indorsed on the information the name of a party who was a defendant in another criminal case involving alleged gambling operations. Such party was offered for cross-examination and was asked by the attorney for the defendant certain questions which he declined to answer Such questions had reference to visits by the witness to a cafe operated by defendant Kert, and, also, as to the acquaintance of the witness with a certain waitress who had been a witness in the case. It was held that the trial court properly sustained the refusal of the witness to answer the questions. In discussing the situation, it was said in part:

''Defendant claims it was error not to compel Watkins to reply to the questions asked, that a witness has not the absolute right to refuse to answer all questions on the ground that it might be incriminating; that he solely has the option to refuse, and then it is the duty of the judge to determine whether the testimony would be incriminating or not. See *In re Watson,* 293 Mich. 263. This unquestionably is true, but the judge as a rule must exercise caution so as not to deny a witness his constitutional rights against self-incrimination. Watkins was a defendant in a case in which his connection with gambling was at issue; and if he had gone to Kert's cafe adjoining the gambling house, it might be a very important link in the chain of cir-

cumstances that tied him up with the gamblers.
This also would be true of his meeting defendant
Kert and others at the cafe, or taking meals there.
These were the main questions that were asked and
we can readily see how his answers, if they corrob-
orated other witnesses, might tend to incriminate
him.   Kert did not testify.   While there is no ques-
tion that the witness is not the sole judge of whether
the answer to the question will incriminate him or
not, it is largely discretionary with the judge in the
first instance to determine whether the witness
should be obliged to answer or not, when he invokes
his constitutional privilege.   The correct rule is
stated in *Russell* v. *United States* (C. C. A.), 12 Fed.
(2d) 683, 693:

"'The judge, who saw the witness and who heard
the government's testimony,  *   *   *   believed the
claim of incriminating tendency was made in good
faith, and that the witness was entitled to assert the
privilege.   In the absence of manifest error, this
ruling should not be reversed.'"

See, also, *People* v. *Robinson,* 306 Mich. 167; *Peo-
ple* v. *Roxborough,* 307 Mich. 575.   Under the facts
in the case at bar it can not be said that Prujansky's
answers to the questions propounded to him, and
which he declined to answer, might not have in-
criminated him.   In consequence it can not be said
that there was "manifest error" in the order from
which the appeal has been taken.

It is further claimed on behalf of appellant that
if Prujansky's answers to the questions discussed
might have tended to incriminate him he waived the
privilege of declining to answer by his replies to
certain inquiries propounded to him on the pre-
liminary examination.   As before stated, he testified
as to his name, place of residence, and the nature
and location of his business.   He also testified that
he knew Sam Bernstein and Louis Bernstein, and

that they were his partners in said business. Reliance is placed on the case of *Foster* v. *People,* 18 Mich. 266. There a witness for the people gave testimony, not only tending to show the guilt of the defendant but, also, his own guilt, of the crime of larceny. On cross-examination he was interrogated with reference to an affidavit that he had made in which he averred that he had a good defense upon the merits, and was asked what the defense was. The witness declined to answer the question and the trial court refused to require him to do so. It was held that such refusal was error in view of the fact that the witness had previously given testimony showing his guilt. The general principle involved was stated in the following language:

"Accordingly, where a witness has voluntarily answered as to material criminating facts, it is held with uniformity that he can not then stop short and refuse further explanation, but must disclose fully what he has attempted to relate. This view is adopted by the text writers, and is very well explained in several of the authorities, where the principle is laid down and enforced."

The weight of authority seems to support the view that a witness who discloses a criminal transaction on his part without invoking his privilege against self-incrimination, waives the privilege with respect to the details and particulars of the fact or transaction disclosed. See annotation 147 A. L. R. 255. This is, in substance, the contention of counsel for the appellant in their brief. However, the record in the case at bar does not justify or permit the application of such principle. The matters to which Prujansky testified on the preliminary examination did not relate to his acquaintance, associations or dealings with the defendants, or any of them. The

situation is materially different from that involved in *Foster* v. *People, supra.* There the witness went to the extent of testifying to facts establishing his guilt of a criminal offense. The questions that he refused to answer on cross-examination indicated an attempt to impeach the testimony that he had previously given. In the case at bar, however, the questions that Judge Groat refused to compel Prujansky to answer were clearly not designed to clarify, or otherwise affect, the testimony given without objection. Such testimony did not constitute a waiver of the constitutional privilege against self-incrimination.

Other questions raised by counsel in their briefs do not require specific consideration. For the reasons above stated we conclude that the order from which the appeal has been taken is not open to objection on any of the grounds urged against it by appellant. The order is, therefore, affirmed.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.