*In re* COHEN.

Witnesses—Privilege Against Self-Incrimination—State Immunity—Contempt—Basis for Refusal to Answer.

In one-man grand jury proceedings to investigate the existence of gambling and possible protection by county officials, which was conducted while a Federal grand jury was sitting in the same county for the purpose of inquiring into matters pertaining to possible violations of Federal income tax laws, witness who was granted immunity from State prosecution and who continued in his refusal to answer questions as to his activity as a doorman at an alleged handbook on the ground that his answer might incriminate him and subject him to Federal prosecution *held*, properly adjudged guilty of contempt of court where questions asked did not involve reportable income in which the government of the United States was interested (Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, §§ 17217, 17220).

Habeas corpus proceedings by Irving Cohen with accompanying certiorari to Honorable Homer Ferguson, Wayne circuit judge, to obtain release from commitment to county jail for contempt of court in

one-man grand jury proceeding. Submitted October 4, 1940. (Calendar No. 41,300.) Writ denied December 11, 1940.

*William G. Fitzpatrick, Jr.,* for petitioner.

*Chester P. O'Hara, William D. Brusstar,* and *Guy W. Jensen (Wendell Brown,* of counsel), *amici curiae.*

SHARPE, J. On July 26, 1940, petitioner, Irving Cohen, was committed to the Wayne county jail for a period of 60 days and fined $100 for contempt of court by Judge Homer Ferguson of the circuit court of Wayne county sitting as a one-man grand jury pursuant to 3 Comp. Laws 1929, § 17217 *et seq.* (Stat. Ann. § 28.943).

It appears that on the above date while Judge Ferguson was conducting the one-man grand jury inquiry and investigation of the existence of gambling and possible protection by officials of Wayne county including any failure to enforce the criminal law, petitioner, Irving Cohen, appeared before the grand jury as a witness to give testimony upon material matters being inquired into by the grand jury.

It also appears that while petitioner was being interrogated by Judge Ferguson, there was a Federal grand jury sitting in the Federal building in the city of Detroit inquiring into matters pertaining to possible violations of Federal statutes, including the so-called Federal income tax laws.

After being sworn before the grand jury, petitioner was asked the following questions:

"What police officers or police officials did you pay protection money to for the operation of a

handbook in the city of Detroit, Wayne County, Michigan, during the past six years?"

Upon refusal of the witness to answer, the following motion was made:

"Now comes Thomas Read, Attorney General for the State of Michigan, by Thomas A. Kenney, Assistant Attorney General, and moves the Court that Irving Cohen, a witness before this court conducting an inquiry in the county of Wayne by virtue of 3 Comp. Laws 1929, § 17217* and § 17218, be required under 3 Comp. Laws 1929, § 17220, to answer the following questions, the answers to which might tend to incriminate him, the said Irving Cohen, and that for any such answer which might tend to incriminate him, he, the said Irving Cohen, shall receive immunity and shall not thereafter therefore be prosecuted for any offense concerning which said answer may have tended to incriminate him, as provided for in section 17220 aforesaid. Namely:"

The court ruled:

"This court does hereby grant the within motion, and does require the witness, Irving Cohen, therein named, to answer each of said questions set forth in the said motion, and does grant the said witness full immunity as provided by law."

And said:

"That is signed. Under the law you have been given immunity. Therefore the court will now require you to answer that question. What is your answer?"

Petitioner then answered as follows: "I stand on my State and Federal constitutional rights."

It is conceded that Judge Ferguson sitting as a one-man grand jury could grant immunity to said

---

* Stat. Ann. § 28.943 *et seq.*—REPORTER.

Irving Cohen under 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946). However, petitioner contends that it was impossible for the circuit judge to grant immunity from Federal prosecution; that the subject matter in response to the questions which petitioner refused to answer was such that, if divulged, might and probably would constitute links in the chain of evidence liable and tending to cause his indictment by the Federal grand jury then sitting in Detroit; and that there was imminent danger to him if he answered the above question. It is conceded by the prosecution that the State has no power to grant immunity from prosecution under the Federal laws; but it is urged that the inability of the State to grant immunity from Federal prosecution does not nullify 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946); and that petitioner did not make a proper showing on which to base his claim of immunity in either jurisdiction.

In *Re Watson,* 293 Mich. 263, 285, we said:

"To overcome the privilege, the extent of the immunity would have to be of such a nature that it would protect, not only against State prosecution, but also against any reasonably probable Federal prosecution. The claim of the privilege in the face of a State immunity statute cannot be used as a subterfuge or pretense to refuse to answer in proceedings to detect or suppress crime. But neither can the grant of immunity be used to compel answers that will lead straight to Federal prosecution. Whenever the danger of prosecution for a Federal offense is substantial and imminent as a result of disclosures to be made under a grant of immunity by the State, such immunity is insufficient to overcome the privilege against self-incrimination."

We also said in that case:

"We are of the opinion that the privilege against self-incrimination exonerates from disclosure when-

ever there is a probability of prosecution in State or Federal jurisdictions."

The test as to whether an answer to a question is self-incriminating is reaffirmed *In the Matter of Bommarito,* 270 Mich. 455, 458, where it is said:

"The witness himself is not the sole judge of whether his testimony will tend to incriminate himself, but he must answer a question put to him unless the answer may actually tend to criminate him. Where it is perfectly apparent that the answer cannot injure him the court should compel him to answer."

It is urged that the above rule supports petitioner's claim that the danger of prosecution for a Federal offense was substantial and imminent. The application of the above. rules must be tested in the light of the facts in each particular case. In the case at bar, petitioner testified that he had been a doorman at Yeager's place, an alleged handbook located at 1735 Cass avenue in the city of Detroit; that Yeager and the two Mosses were operating there; that Yeager was petitioner's boss; and that he believed that the two Mosses were partners, but petitioner's dealings were confined to Yeager alone.

Petitioner, as a witness, testified as follows:

"*Q.* Well, now, what police officers or police officials did you pay protection money to for the operation of a handbook in the City of Detroit, Wayne County, Michigan, during the past six years?

"*A.* Never paid any.

"*Q.* What?

"*A.* I never paid any.

"*Q.* You never handed any officers any money?

"*A.* No, sir; to coin a phrase, I never gave a copper to a copper.

"*Q.* Didn't Yeager hand you money, and you hand it to the coppers?

"*A.*   No, sir.

"*Q.*   Now, are you positive of that?

"*A.*   Yes, sir. * * *

"*Q.*   (*By the Court*) Did Yeager ever give you any money to pay any police officers?

"*A.*   I stand on my State and Federal rights, and refuse to answer that, your Honor. * * *

"*Q.*   (*By Mr. O'Hara*) Why do you stand on your constitutional rights with reference to that question, if that is what you mean?

"*A.*   Just a question that I prefer not answering.

"*Q.*   You mean on the ground it might incriminate you? That is the only way you can stand on * * * [your] rights, as you put it.   Do you mean your constitutional rights?

"*A.*   Yes, sir, Constitution, the Federal and State constitutional rights, for fear of incriminating myself. * * *

"*Q.*   Now, which is right, the answer you gave the Court a few moments ago, or the position you are taking now?   In other words, you said a few moments ago you didn't pay anybody any money. Now, you stand on your constitutional rights for fear your answer might incriminate you?

"*A.*   That is right.   I stand on my State and Federal rights, and refuse to answer for fear of incriminating myself. * * *

"*Q.*   Police officers ever come up there and wait for you to get money for them from Yeager?

"*A.*   No, sir. * * *

"*Q.*   (*By the Court*) Did Yeager ever give you any money to pay the police officers?

"*A.*   I answered that by standing on my rights. * * *

"*Q.*   (*By Mr. O'Hara*) In other words, we want to know which end of the story to believe.   In one breath you say you didn't pay them, and in the next breath you stand on your constitutional rights.

"*A.*   I will stand on my constitutional rights for fear of incriminating myself, yes, sir.

"*Q.* Then what you told the Court here about not paying them is false, isn't it?

"*A.* No, sir. I haven't lied to the Judge."

Tested by the rule of immunity in the courts of our State, the witness did not lay any foundation upon which to predicate the right to remain silent and refuse to answer the questions propounded. He was not the sole judge of whether his testimony would tend to incriminate him. Nowhere in the questions asked or answers given was there any evidence that the matters discussed would come to the attention of the Federal authorities. The record is void of any evidence that the matters concerned possible Federal income tax violation. The question asked pertained to payments of money by him to police officials. It did not involve reportable income which the United States government might be interested in.

The refusal of the witness to answer the question was without foundation in law and the writ is denied.

BUSHNELL, C. J., and CHANDLER and McALLISTER, JJ., concurred with SHARPE, J. BOYLES, J., concurred in the result.

WIEST, J. (*concurring*). I concur in the result on the ground stated by Judge Cardozo in *Re Doyle,* 257 N. Y. 244, 267 (177 N. E. 489, 87 A. L. R. 418):

"We put aside as remote and unsubstantial the supposed peril of exposure to prosecution for the making of false tax returns to State or Federal officers."

NORTH and BUTZEL, JJ., concurred with WIEST, J.