PEOPLE v. JOSEPH

Opinion of the Court.

1. Criminal Law—Privilege Against Self-Incrimination—One-Man Grand Jury—Grant of Immunity.

When it is perfectly clear that questions asked could not possibly elicit testimony incriminating a witness, a grant of immunity is unnecessary, and such a witness may be compelled to answer questions posed by one-man grand jury (CLS 1961, § 767.6).

2. Courts—Contumacious Conduct—Punishment—Inherent Power.

Even in absence of statutory authority courts have inherent power to punish for contumacious conduct.

3. Criminal Law—One-Man Grand Jury—Witnesses—Contempt.

The contempt provisions of statute providing for one-man grand jury are essentially criminal with a limited purge provision and a convicted criminal contemnor may purge himself only if he acts while the grand jury is still in session (CLS 1961, § 767.5).

Dissenting Opinion

J. H. Gillis, P. J.

4. Criminal Law—Constitutional Law—Privilege Against Self-Incrimination—Contempt.

*For questions posed by one-man jury to be constitutionally the basis for contempt prosecution arising out of refusal by witness to answer, it must be perfectly clear from all the circumstances in the case that the answers cannot possibly tend to incriminate the witness.*

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 349 *et seq.*
[2] 17 Am Jur 2d, Contempt § 2.
[3, 6] 17 Am Jur 2d, Contempt §§ 76, 89.
[4, 5] 17 Am Jur 2d, Contempt § 32.

5. SAME—SELF-INCRIMINATION—CIRCUMSTANCES OF CASE.

*Fact that one-man grand jury was investigating organized crime and that, though armed with power to confer immunity, he failed to do so, indicates that questions asked of witness were attempts to furnish incriminating evidence against witness himself and as such the questions were properly the subject of a refusal to answer on grounds of self-incrimination.*

6. SAME—ONE-MAN GRAND JURY—CONTEMPT—STATUTE.

*Witness who refused to answer questions before one-man grand jury could not be tried for contempt after expiration of grand juror's term under statute providing for such prosecution since liability for contempt is conditioned upon existence of right of witness to appear before grand juror to purge himself of contempt, such right terminating with expiration of the term of the grand juror (CLS 1961, § 767.5).*

Appeal from Wayne, Bohn (Theodore R.), J. Submitted Division 1 April 2, 1968, at Detroit. (Docket No. 3,726.) Decided November 29, 1968. Rehearing denied January 15, 1969. Leave to appeal granted June 11, 1969. 382 Mich 760.

Moses Joseph was convicted of criminal contempt. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert C. Goussy,* for the people.

*Louisell & Barris,* for defendant.

McGREGOR, J. On August 8, 1966, the defendant refused to answer questions put to him at a hearing before Judge Edward S. Piggins, sitting as a one-man grand jury. By refusing to answer the appellant precipitated the legalities, including his conviction of criminal contempt, which led to this appeal.

Four questions which were asked of the defendant after he was sworn at the hearing were considered in the contempt proceedings: (1) Are you familiar with East Jefferson Avenue in the city of Detroit, or by that I mean the location of East Jefferson Avenue in the city of Detroit? (2) Have you ever given any money, gift, or gratuity or any other thing of value directly or indirectly or through any other person or persons, to any candidate for a public or political office in the city of Detroit or the county of Wayne? (3) Have you ever made a political contribution to any candidate for public office in the state of Michigan? (4) Are you married or single?

In response to each of these questions, the defendant read the following statement: "I honestly feel if I am forced to answer the question I will be forced to be a witness against myself in violation of my rights under the United States Constitution." After the defendant's response to each of these questions, Judge Piggins ruled the questions were not incriminating and directed the defendant to answer. The direction to answer only resulted in defendant rereading his prepared statement and his continued refusal to answer the questions. Judge Piggins did not grant to defendant immunity from prosecution which might result from such answers, as the judge was empowered to do under CLS 1961, § 767.6 (Stat Ann 1954 Rev § 28.946).

Four counts of criminal contempt were filed against the defendant on the same day, one for each question which the defendant had refused to answer. On April 26, 1967, many months after the termination of the Piggins grand jury, defendant was found guilty of criminal contempt by circuit judge Theodore R. Bohn, and a fine of $1,000 was imposed.

Several theories are advanced by the defendant in seeking a vacation of the contempt conviction and fine: that he should have been granted immunity if required to testify, because he had received unsavory publicity which tended to label him as an underworld figure; that it is impossible to be found in contempt of a one-man grand juror after its expiration because of the statutory provision for purge of contempt by answering the questions of the grand juror; and that proper jurisdiction for all criminal matters in Detroit is exclusively in Recorder's Court.

A grant of immunity is unnecessary and an answer can be compelled if the questions asked by a grand jury are innocuous or could not result in the witness being charged with a crime. *In re Vickers* (1963), 371 Mich 114; *Hoffman v. United States* (1951), 341 US 479 (71 S Ct 814, 95 L Ed 1118); also see Annot., 95 L Ed 1126, 1128, 1129, and cases cited therein. However, it must be perfectly clear that the questions asked could not possibly have elicited testimony incriminating to the witness. *Malloy v. Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653). While there are elements in questions 2 and 3 which reveal some potential for incrimination, we agree with both Judge Piggins and Judge Bohn that questions 1 and 4 clearly could not incriminate the witness and his refusal to answer those questions was contumacious conduct.

The statutory authority for punishing for contempt of a one-man grand jury investigation is found in CLS 1961, § 767.5 (Stat Ann 1954 Rev § 28.945):

"Any witness neglecting or refusing to appear in response to such summons or to answer any questions which such judge may require as material to such inquiry, shall be deemed guilty of a contempt and after a public hearing in open court and con-

viction of such contempt, shall be punished by a fine not exceeding $1,000.00 or imprisonment in the county jail not exceeding 1 year or both at the discretion of the court; Provided, That if such witness after being so sentenced shall offer to appear before such judge to purge himself of such contempt, the judge shall cause such witness to be brought before him, and after examination of such witness, the judge may in his discretion commute or suspend the further execution of such sentence."

But even if this statutory authority did not exist, courts have inherent power to punish for contumacious conduct. *In re White* (1954), 340 Mich 140, reversed on other grounds by United States Supreme Court, *sub nom In re Murchison* (1955), 349 US 133 (75 S Ct 623, 99 L Ed 942).

Defendant argues that if he was in contempt of the grand jury he could not be fined after the termination of the grand jury term, because he would have thereby lost his statutory right to purge himself of contempt. Further, he argues, the purge provision renders his contempt civil, as criminal contempt is punishment for past misbehavior and normally cannot be purged. *Green* v. *United States* (1958), 356 US 165 (78 S Ct 632, 2 L Ed 2d 672); *Jaikins* v. *Jaikins* (1968), 12 Mich App 115. If the contempt were civil, it could not last longer than the grand jury session.

The contempt statute involved is essentially criminal but with a limited purge provision as a further inducement for witnesses to answer non-incriminating questions. A convicted criminal contemnor may purge himself only if he acts while the grand jury is still in session. The burden is on the contemnor to redeem himself, and there is added reason for later witnesses to answer questions because of the correspondingly lesser probability that they will be convicted before the grand jury session terminates.

By this interpretation, the statute's criminal nature obtains, and the purge provision serves solely as a mutually beneficial incentive to reply to non-immunity questions. The purge provision does not alter the criminal nature of the statute or limit criminal contempt to those actions prosecuted during the grand jury session. Anent the criminal or civil nature of the statute, defendant argues that the tail wags the dog, while the court ingenuously holds that the dog wags the tail.

Defendant's argument that a circuit court cannot punish for contempt of a circuit judge is deemed to be without merit in light of the court's inherent power to punish for contempt.

Conviction affirmed.

FITZGERALD, J., concurred with McGREGOR, J.

J. H. GILLIS, P. J. (*dissenting*). I cannot agree because I do not believe the trial judge could properly conclude that the 4 questions (as contained in the majority opinion) could not have possibly tended to incriminate the defendant.

The correct standard for the compulsion of testimony is, I believe, as stated in *Hoffman* v. *United States* (1951), 341 US 479 (71 S Ct 814, 95 L Ed 1118); also an appeal from a conviction of criminal contempt for asserting the privilege in response to a grand jury inquiry. The Court held, in reversing, (341 US at 488):

"In this setting it was not *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly have such tendency'* to incriminate [citations omitted]." (Emphasis supplied.)

The Supreme Court was faced with a similar dilemma of weighing the social necessity of the desired testimony against the protection of the right against self-incrimination. At 341 US 489, 490, the Court states:

"For these reasons we cannot agree with the judgments below. If this result adds to the burden of diligence and efficiency resting on enforcement authorities, any other conclusion would seriously compromise an important constitutional liberty. 'The immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime' *United States* v. *White,* 322 US 694, 698 [64 S Ct 1248, 88 L Ed 1542, 152 ALR 1202] (1944)."

The Court then quoted with approval the opinion by Mr. Justice Brandeis in *McCarthy* v. *Arndstein* (1924), 266 US 34, 42 (45 S Ct 16, 69 L Ed 158):

"If Congress should hereafter conclude that a full disclosure  *  *  *  by the witnesses is of greater importance than the possibility of punishing them for some crime in the past, it can, as in other cases, confer the power of unrestricted examination by providing complete immunity."

*Hoffman* has been expressly cited as applicable to the States. *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653).

In the present case, the "setting" is one of "tending to incriminate" when all the circumstances are considered. Cf. *Emspak* v. *United States* (1955), 349 US 190 (75 S Ct 687, 99 L Ed 997). It is especially relevant to consider that although armed with the power to immunize defendant from prosecution (*In re Colacasides* [1967], 379 Mich 69) the grand juror chose not to do so. It is from there a short jump to the not wholly unreasonable conclu-

sion that the reason immunity was not granted was that the grand juror was attempting to furnish links in the chain of incriminatory evidence against the witness himself. When viewed in this light, even borderline or threshold questions appear all the less innocuous.

"It [the fifth amendment privilege] reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt." *Murphy* v. *Waterfront Commission of New York Harbor* (1964), 378 US 52, 55 (84 S Ct 1594, 12 L Ed 2d 678).

A second basis on which I dissent is that even if defendant could constitutionally be punished for criminal contempt, he may not be so punished under CLS 1961, § 767.5 (Stat Ann 1954 Rev § 28.945), the provisions of which section are quoted at page 497 of the majority opinion. The legislature has created a penalty in this statute, but only while granting an accused certain rights as well.

The right provided by the statute is the contemnor's right to "appear before such judge to purge himself of such contempt." To my mind, the liability created by this statute is conditioned upon the existence of the stated right, and that liability cannot attach where the right is extinct or nonexistent.

In this case, defendant was convicted after expiration of the term of the grand jury. There was no way in which he could have exercised his right to appear and offer to purge.

I would reverse.