PEOPLE *v.* JOSEPH

Opinion of the Court

1. Constitutional Law — Self-Incrimination Privilege — Contempt — Bribery.

Defendant properly invoked his constitutional privilege against self-incrimination and was not guilty of contempt, in refusing to answer questions before a one-man grand jury which manifestly sought to elicit answers admitting at least a transfer of money, gift or gratuity or political contribution, where an affirmative answer to the questions would have provided an essential element of the offense of bribery and immunity from prosecution was not offered or granted him, and where the purpose of the grand jury was to investigate bribery of public officers and employees (US Const, Am 5).

2. Contempt — One-Man Grand Jury — Self-Incrimination Privilege.

Defendant's unjustified assertion of silence properly subjected him to punishment for contumacious conduct where, in a one-man grand jury investigation to determine whether the crimes of attempted bribery, or bribery of public officials and employees had occurred, he refused to answer whether he was familiar with the location of a certain street and whether he was married or single, and where these questions were not of the type which could logically, though mediately, link defendant by his answer to a definite element of the offenses being investigated.

---

References for Points in Headnotes

[1–5, 8] 58 Am Jur, Witnesses § 36.
  Privilege against self-incrimination as to testimony before grand jury. 38 ALR2d 225.
[2, 3, 8] 58 Am Jur, Witnesses § 50.
[4, 5] 17 Am Jur 2d, Contempt § 105.
[6] 56 Am Jur, Venue § 2.
[7] 17 Am Jur 2d, Contempt § 84.

3. CONTEMPT—ONE-MAN GRAND JURY—PRIVILEGE.

The privilege against self-incrimination before a one-man grand jury does not extend to refusal to answer questions which are not of the type which could logically, though mediately, link defendant by his answer to a definite element of the offenses under investigation, where the chase is not getting too hot or the scent too fresh; the answer to a question may not be withheld because it might under some conceivable circumstances form part of a crime.

4. CONTEMPT — CRIMINAL CONTEMPT — PURGING — DELEGATION OF POWER — CONSTITUTIONAL LAW — STATUTES — SEVERABILITY.

A statutory provision in regard to a contemnor appearing before a one-man grand jury to purge himself, and the discretion of the judge to commute or suspend further execution of such sentence, is, so far as criminal contempt is concerned, an unconstitutional delegation by the legislature to the judicial branch of government of a power which exists only in the executive but this proviso is severable from the remainder of the statute, which is in itself a complete and enforceable act (MCLA § 767.5).

5. CONTEMPT—CRIMINAL CONTEMPT—PURGING.

A defendant was deprived of no legal right to purge himself after sentencing and after the termination of the one-man grand jury before which he refused to answer certain questions, where the contempt was criminal and the order of contempt was punitive in design and effect, the crime being complete prior to the charge imposed and, upon conviction and sentencing by the trial judge, the sentence imposed was placed beyond the court's power to amend (MCLA § 767.5).

6. VENUE—ACTION—JURISDICTION—TRIAL—WORDS AND PHRASES.

The term "venue" has nothing whatsoever to do with "jurisdiction" but is concerned only with the place of a trial of an action within the state while jurisdiction deals with the service of process and the power of the court to act in the matter.

7. CONTEMPT—JURISDICTION—COURTS.

Contempt, like other crimes, is an affront to society as a whole, but it is more directly an affront to the justice, authority and dignity of the particular court involved; accordingly, the court with jurisdiction over the proceedings wherein the alleged contempt occurred has jurisdiction over contempt proceedings; therefore, where a defendant was charged with contempt before

a one-man grand jury held in the County of Wayne, jurisdiction for the trial of such offense was in that court rather than in the Recorder's Court of the City of Detroit (MCLA § 726.11).

### SEPARATE OPINION
### DETHMERS and BLACK, JJ.

8. CONSTITUTIONAL LAW — SELF-INCRIMINATION PRIVILEGE — CONTEMPT — BRIBERY.

*Conviction of criminal contempt before a one-man grand jury investigating bribery of public officials and employees should be affirmed where, based on the constitutional privilege against self-incrimination, defendant refused to answer whether he was familiar with the location of a certain street, whether he had ever given any money, gift or gratuity or other thing of value directly or indirectly or through any other person or persons to any candidate for a public or political office in a certain city or in a certain county, whether he had ever made a political contribution to any candidate for public office in Michigan, and whether he was married or single, as the questions were innocuous and were answerable either way by a single word and it would venture too far to find that the answers might or could import some "link" in some chain of evidence needed to support a prosecution against him (US Const, Am 5).*

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Fitzgerald and McGregor, JJ., affirming Wayne, Theodore R. Bohn, J. Submitted May 7, 1970. (Calendar 10, Docket No. 52,350.) Decided September 22, 1970.

14 Mich App 494 affirmed in part and reversed in part.

Moses Joseph was convicted of criminal contempt. Defendant appealed to Court of Appeals. Affirmed. Defendant appeals. Affirmed in part and reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Attorney General, for the people.

*Ivan E. Barris,* for defendant.

T. M. Kavanagh, J.   Defendant appeared before a one-man grand jury, convened by the Wayne County Circuit Court, and, after being sworn, refused to answer the following questions:

(1) Are you familiar with East Jefferson Avenue in the City of Detroit, or by that I mean the location of East Jefferson Avenue in the City of Detroit?

(2) Have you ever given any money, gift or gratuity or any other thing of value directly or indirectly or through any other person or persons to any candidate for a public or political office in the City of Detroit or the County of Wayne?

(3) Have you ever made a political contribution to any candidate for public office in the State of Michigan?

(4) Are you married or single?

To defendant's asserted privilege "[not] to be a witness against myself," the grand juror ruled the questions were not incriminating and directed defendant to answer.   Immunity from prosecution was not offered or granted to defendant pursuant to MCLA § 767.6 (Stat Ann 1954 Rev § 28.946).

Upon defendant's continued refusal to answer, a four-count bench warrant issued charging defendant with contempt for each question which he refused to answer.   He was arraigned before another judge of Wayne Circuit Court, stood mute, and moved to dismiss and quash the grand jury warrant on the grounds that: Count I was in fact self-incriminating; Count II was merged with Count III and, therefore, was not properly brought against defendant;

Count III was in fact incriminatory; and Count IV was outside the scope of the grand jury investigation and provided no legal basis for prosecution. By supplemental motion to dismiss, defendant alleged that Recorder's Court and not the Wayne County Circuit Court was the proper court to hear the criminal charge, pursuant to MCLA § 726.11 (Stat Ann 1962 Rev § 27.3561).

Defendant waived trial by jury and a record was made by stipulation consisting of the order creating the grand jury, defendant's testimony before the grand jury, and newspaper clippings relating to defendant's background. On April 26, 1967—after termination of the grand jury—defendant was found guilty of criminal contempt and fined $250 on each count.

Defendant appealed and his conviction was affirmed by the Court of Appeals (McGREGOR, J., with FITZGERALD, J., concurring; J. H. GILLIS, P. J., dissenting). 14 Mich App 494. Application for rehearing was denied by the same decretal division. Application for leave to appeal to this Court was timely filed and granted. 382 Mich 760.

The issues presented by this appeal are:

(1) Whether defendant, not having been granted immunity, properly invoked his privilege against self-incrimination to the propounded questions?

(2) Whether the judgment of criminal contempt subsequent to the termination of the grand jury deprived defendant of a statutory right to purge himself? (MCLA § 767.5 [Stat Ann 1954 Rev § 28.945].)

(3) Whether venue was improperly laid in Wayne Circuit Court?

There are several situations by which a witness may find himself charged with contempt of a grand jury. The only kind we are concerned with in this

case is that of a witness appearing before a judicial inquiry and refusing to answer certain questions put to him.

The constitutional standard against compulsory self-incrimination made binding upon the states in *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653) (see, also, *In re Colacasides* [1967], 379 Mich 69, 84) as it relates to the grand jury— contempt situation was recited in the landmark case of *Hoffman* v. *United States* (1951), 341 US 479 (71 S Ct 814, 95 L Ed 1118), at pp 486, 487:

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. *Blau* v. *United States* [1950], 340 US 159 [71 S Ct 223, 95 L Ed 170]. But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. *Mason* v. *United States* [1917], 244 US 362, 365 [37 S Ct 621, 61 L Ed 1198], and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers* v. *United States* [1951], 340 US 367 [71 S Ct 438, 95 L Ed 344, 19 ALR2d 378], and to require him to answer if 'it clearly appears to the court that he is mistaken.' *Temple* v. *The Commonwealth* [1881], 75 Va 892, 899. However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which

it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' See Taft, J., in *Ex parte Irvine* [SD Ohio, 1896] 74 F 954, 960."

See, also, *In re Cohen* (1940), 295 Mich 748; *People v. Hoffa* (1947), 318 Mich 656; *In re Vickers* (1963), 371 Mich 114.

Our determination, therefore, must turn upon whether, from reading the record as a whole, defendant was justified in reasonably apprehending danger from a direct answer or whether he mistakenly apprehended the hazard of incrimination.

The second and third questions asked by the grand juror manifestly sought to elicit answers admitting at least a transfer of "money, gift, or gratuity * * * [or] political contribution." The inculpatory ramifications of an answer to these questions is not subject to dispute when understood in the context of the ordered purpose of the grand jury.[1] An affirmative answer to either question propounded by the grand juror would have provided an essential element of the offense of bribery. See *People v. Ritholz* (1960), 359 Mich 539, 552. See, also, 3 Gillespie, Criminal Law & Procedure (2d ed), ch 50.

---

[1] The declared purpose of the grand jury is recited in the amended order granting the Attorney General's petition for a grand jury as: " * * * conducting an investigation to determine whether the crime of attempted bribery, the crime of bribery of public officers and employees, the crime of acceptance of a bribe by public officers and employees, the crime of offering a reward to a public officer or employee to omit to perform acts for a consideration, reward or inducement, the crime of wilful neglect by a public officer or employee, the crime of conspiracy to accept a bribe by public officers or employees, and to solicit bribes, the crime of conspiracy to obstruct justice by private persons and public officers and employees, and crimes relating to vices and gambling * * * *."

Although the people candidly recognize this point, they argue that these questions were innocuous because they "were not in the context of a specific payment of money to a specific individual." This wholly ignores what was lucidly stated by the United States Supreme Court in *Blau* v. *United States* (1950), 340 US 159 (71 S Ct 223, 95 L Ed 170), at p 161:

"Whether such admissions by themselves would support a conviction under a criminal statute is immaterial. Answers to the questions asked by the grand jury would have furnished a link in the chain of evidence needed in a prosecution of petitioner for violation of (or conspiracy to violate) the Smith Act. Prior decisions of this court have clearly established that under such circumstances, the Constitution gives a witness the privilege of remaining silent. The attempt by the courts below to compel petitioner to testify runs counter to the Fifth Amendment as it has been interpreted from the beginning. *United States* v. *Burr,* 25 Fed Cas, Case No 14,692e, decided by Chief Justice Marshall in the Circuit Court of the United States for the District of Virginia; *Counselman* v. *Hitchcock* [1892], 142 US 547 [12 S Ct 195, 35 L Ed 1110]; *Ballmann* v. *Fagin* [1906], 200 US 186 [26 S Ct 212, 50 L Ed 433]; *Arndstein* v. *McCarthy* [1920], 254 US 71 [41 S Ct 26, 65 L Ed 138]; *Boyd* v. *United States* [1886], 116 US 616 [6 S Ct 524, 29 L Ed 746]; *cf. United States* v. *White* [1944], 322 US 694, 698, 699 [64 S Ct 1248, 88 L Ed 1542, 152 ALR 1202]."

We hold that defendant properly invoked his constitutional privilege against self-incrimination as to questions 2 and 3. We further hold that judicial sanction for the assertion of his constitutional right in the form of contempt proceedings was invalid and reverse the judgments of conviction on Counts II and III.

On the other hand, a review of the record discloses that questions 1 and 4 were not of the type which could logically, though mediately, link defendant by his answer to a definite element of the involved offenses. In no sense was the chase getting too hot or the scent too fresh. *United States* v. *Weisman* (CA2, 1940), 111 F2d 260.

While the safeguards against self-incrimination are vigilantly and vigorously protected, they do not sanction every chimerical danger viewed by defendant as a link in the chain of evidence. As stated by our Court in *In re Schnitzer* (1940), 295 Mich 736, 740:

"The tendency to incriminate must be a reasonable one; an answer may not be withheld because it might possibly under some conceivable circumstances form part of a crime."

We conclude as to questions 1 and 4, that despite their questionable relevancy, defendant should have responded to the questions. His adamant but unjustified assertion of silence properly subjected him to the court's exercise of its power to punish contumacious conduct.

It is next argued by defendant that the imposition of a sentence after the termination of the grand jury was unlawful as depriving him of his statutory right to purge himself. MCLA § 767.5 (Stat Ann 1954 Rev § 28.945).[2]

---

[2] "Any witness neglecting or refusing to appear in response to such summons or to answer any questions which such judge may require as material to such inquiry, shall be deemed guilty of a contempt and after a public hearing in open court and conviction of such contempt, shall be punished by a fine not exceeding $1,000.00 or imprisonment in the county jail not exceeding 1 year or both at the discretion of the court: Provided, That if such witness after being so sentenced shall offer to appear before such judge to purge himself of such contempt, the judge shall cause such witness to be brought before him and, after examination of such witness, the judge may in his discretion commute or suspend the further execution of such sentence."

This argument misapprehends the nature of the contempt order here involved. Unlike the order in *Colacasides, supra,* which imposed coercive imprisonment conditioned upon either purgation or the expiration of the grand jury, the order in the instant case was punitive in design and effect.

The United States Supreme Court in *Bloom* v. *Illinois* (1968), 391 US 194 (88 S Ct 1444, 20 L Ed 2d 522) said:

"Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." (P 201.)

The crime in the instant case was complete prior to charge and, upon conviction and sentencing by the trial judge, the sentence imposed was placed beyond the court's power to amend. *People* v. *Fox* (1945), 312 Mich 577. The proviso contained in MCLA § 767.5 (Stat Ann 1954 Rev § 28.945) in regard to contemnor appearing before the judge to purge himself, and the discretion of the judge to commute or suspend further execution of such sentence, is, so far as criminal contempt is concerned, an unconstitutional delegation by the legislature to the judicial branch of government of a power which exists only in the executive. *People* v. *Freleigh* (1952), 334 Mich 306, 310. Admittedly, the *Freleigh* and *Fox* cases were construing the Constitution of 1908, art 6, § 9. However, the parallel provision in the Constitution of 1963, art 5, § 14, lends itself to a comparable interpretation. The proviso in question is severable from the remainder of the statute, and the remainder is in itself a complete and enforceable act. See MCLA § 8.5 (Stat Ann 1969 Rev § 2.216).[3]

---

[3] In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

Defendant was deprived of no legal right to purge himself after sentencing.

Defendant frames the last issue as whether venue was improperly laid in Wayne Circuit Court. He then proceeds to discuss the question of whether Recorder's Court has original and exclusive jurisdiction of all prosecutions and proceedings on behalf of the people of this state for crimes, misdemeanors and offenses arising under the laws of this state and committed within the corporate limits of the City of Detroit.

Although the terms are sometimes erroneously used interchangeably, "venue" has nothing whatsoever to do with "jurisdiction." Instead it is concerned only with the *place* of trial of an action within the state. *Peplinski* v. *Employment Security Commission* (1960), 359 Mich 665, 668. "Jurisdiction" deals with the service of process and the *power* of the court to act in the matter. *Langdon* v. *Wayne Circuit Judges* (1889), 76 Mich 358, 367. We, therefore, address ourselves to the question of jurisdiction and not venue.

Defendant's argument challenging the jurisdiction of the Wayne Circuit Court is that the Recorder's Court of the City of Detroit by statute has "original and exclusive jurisdiction of all prosecutions and proceedings * * * for crimes * * * committed within the corporate limits of the City of Detroit * * * ," with certain exceptions not pertinent. MCLA § 726.11 (Stat Ann 1962 Rev § 27.3561). Defendant argues that criminal contempt is a crime in the ordinary sense of the word. *Bloom* v. *Illinois,*

---

"If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable."

*supra.* He, therefore, concludes that jurisdiction over a prosecution for criminal contempt occurring in the City of Detroit lies in Recorder's Court.

While contempt, like other crimes, is an affront to society as a whole, it is more directly an affront to the justice, authority and dignity of the particular court involved. Accordingly, the court with jurisdiction over the proceedings wherein the alleged contempt occurred has jurisdiction over contempt proceedings. *MacLean* v. *Harp* (1933), 265 Mich 172; *Fitzsimmons* v. *Board of Canvassers of Detroit* (1898), 119 Mich 147.

Criminal contempt is also distinguishable from other crimes in that:

"There is inherent power in the courts, to the full extent that it existed in the courts of England at the common law, independent of, as well as by reason of statute    *    *    *    , which is merely declaratory and in affirmation thereof, to adjudge and punish for contempt    *    *    *    . Such power, being inherent and a part of the judicial power of constitutional courts, cannot be limited or taken away by act of the legislature, *nor is it dependent on legislative provision for its validity or procedures to effectuate it." In re Huff* (1958), 352 Mich 402, 415, 416. (Emphasis added.)

The United States Supreme Court imposed more stringent due process requirements on proceedings to punish witnesses for contempt of Michigan's "one-man grand jury" in the cases of *In re Oliver* (1948), 333 US 257 (68 S Ct 499, 92 L Ed 682), and *In re Murchison* (1955), 349 US 133 (75 S Ct 623, 99 L Ed 942). However, neither case questioned the inherent power, independent of statute, of Michigan's constitutional courts to punish for contempt. In fact, the *Murchison* Court expressly recognized that only Michigan courts have the power to declare whether

or not the Michigan legislature can restrict or regulate their contempt powers. The court responded to petitioner's claim that a Michigan statute prohibited the offended judge from trying the contempt case as follows:

"The trial judge answered * * * [the claim] by holding that the state statute barring him from trying the contempt cases violated the Michigan Constitution on the ground that it would deprive a judge of inherent power to punish contempt. This interpretation of the Michigan Constitution is binding here." (P 135.)

Three years later, this Court in *In re Huff, supra,* held that constitutional courts had the power to adjudge and punish for contempt and that such power cannot be limited or taken away by act of the legislature, nor is it dependent upon legislative provision for its validity or procedures to effectuate it.

We hold that the Wayne County Circuit Court had jurisdiction to try defendant for criminal contempt.

The convictions on Counts I and IV are affirmed. The convictions on Counts II and III are reversed.

T. E. Brennan, C. J., and Kelly, Adams, and T. G. Kavanagh, JJ., concurred with T. M. Kavanagh, J.

Black, J. *(for affirmance).* With Division 1 divided and this Court correspondingly separated, I concede that the presented questions of alleged self-incrimination* are susceptible of plausible argu-

---

* The questions:

"1. Are you familiar with East Jefferson Avenue in the City of Detroit, or by that I mean the location of East Jefferson Avenue in the City of Detroit?

"2. Have you ever given any money, gift or gratuity or any other thing of value directly or indirectly or through any other person or

ment each way.   Yet I think Mr. Joseph asks that we venture too far into an already overdeveloped area of judicial unreality to find that any answer to any one of these innocuous questions, each of which was answerable either way by a single word, might or could import some "link" in some chain of evidence needed to support a prosecution against him.

Believing as I do that the majority opinion below reasoned to the right result (14 Mich App 494), my vote is cast to affirm.   Cassandra already encroaches too far into the welter of judicial pronouncements which seem to shackle effective effort of the states to protect themselves from the pillage and carnage of crime.   I would give her no more room than she has already usurped in the Arab's tent of due process.

DETHMERS, J., concurred with BLACK, J.

persons to any candidate for a public or political office in the City of Detroit or the County of Wayne?

"3. Have you ever made a political contribution to any candidate for public office in the State of Michigan?

"4. Are you married or single?"