PEOPLE v PATTERSON

1. CRIMINAL LAW—EVIDENCE—GRANT OF IMMUNITY—USE IMMUNITY.

"Use" immunity is immunity from use of compelled testimony and evidence derived therefrom, where immunity from prosecution has been granted.

2. CRIMINAL LAW—EVIDENCE—GRANT OF IMMUNITY—TRANSACTIONAL IMMUNITY.

"Transactional" immunity, where immunity from prosecution has been granted, is immunity from prosecutions for offenses to which compelled testimony relates.

3. CRIMINAL LAW—TRANSACTIONAL IMMUNITY.

A court, when it grants immunity from prosecution, necessarily grants "transactional" immunity where it orders immunity pursuant to the statute (MCLA 767.19b).

4. GRAND JURY—EVIDENCE—CONSTITUTIONAL LAW—RIGHT AGAINST SELF-INCRIMINATION—INCRIMINATING QUESTIONS.

Questions posed to a witness before a grand jury are incriminating where the witness has reasonable cause to apprehend danger from a direct answer.

5. GRAND JURY—EVIDENCE—GRANT OF IMMUNITY—BRIBERY—SUBSEQUENT CHARGES.

A grand jury witness who was promised immunity from prosecution was entitled to the full protection of the shield of immunity and may not subsequently be prosecuted for bribery where the witness admitted to the grand jury that she paid money to police officers; the fact that the witness did not name the officers who collected the money and specify the dates on which payments were made or the amounts thereof is not controlling.

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted Division 1 December 9,

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5] 21 Am Jur 2d, Criminal Law §§ 146–153.
[4] 75 Am Jur 2d, Trial §§ 317, 903, 904.

1974, at Detroit. (Docket No. 16922.) Decided February 24, 1975. Leave to appeal denied, 394 Mich —.

Ruth Patterson was convicted of bribery of two police officers. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*I. Goodman Cohen,* for defendant.

Before: BRONSON, P. J., and McGREGOR, and CARLAND,* JJ.

BRONSON, P. J. This case presents for decision a novel and important issue: How broad is the protection furnished by an order granting immunity from prosecution to a witness who then testifies before a Citizens' Grand Jury?

Most of the material facts are not in dispute. On March 22, 1973 defendant-appellant, Ruth Patterson, was found guilty by jury verdict of bribing two police officers in violation of MCLA 750.117; MSA 28.312. She was sentenced on April 12, 1973 to a term of from two to four years in prison. She appeals by right.

Patterson admittedly operated a "blind pig" in the City of Detroit. She also admitted making five monthly payments to two police officers. The conversations occurring at each of the monthly meet-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ings were surreptitiously recorded by the police officers. Shortly after making the fifth payment, Patterson was arrested.

The parties differ as to the motivating force behind the payments and it is Patterson's position in this dispute which constituted her defense at trial. She claimed that she was forced to make the monthly payments in order to buy protection against police harassment. The police officers, on the other hand, insisted that Patterson solicited their cooperation.

After her arrest, she was called before the Wayne County Citizens Grand Jury to testify about police corruption. She refused to answer any questions, relying on her privilege against self-incrimination. After an order granting her immunity from prosecution was obtained, she answered many of the questions but refused to answer others, claiming that only by remaining silent could she insure that the lives and safety of her family would be protected. Contempt proceedings were instituted to test the sufficiency of this excuse, and her refusal was found to be legally justified. Shortly thereafter the immunity grant was terminated, and Patterson was formally charged with the crime for which she now stands convicted.

Her attorney moved to quash the indictment on the ground that the prosecution was barred by the immunity order issued when she appeared before the grand jury. This motion was denied because "[a]ccording to the record the instant prosecution for bribery was not brought out either by questions to this defendant or answers before the grand jury". The trial judge came to this conclusion because " * * * the records submitted by counsel to the court do not name [the] officers nor identify them". Patterson argues on appeal that

the trial judge erred in denying her motion to quash the indictment.

In order to resolve this dispute, we must answer the following question: Did the immunity granted defendant Patterson in this case bar the prosecution which ended in the conviction from which she presently appeals?

In order to answer this question, we must first determine what type of immunity was granted Patterson in this case. The people claim that she was granted only "use" immunity while Patterson maintains that she was given full-blown "transactional" immunity.

We refer to the recent United States Supreme Court case of *Kastigar v United States,* 406 US 441; 92 S Ct 1653; 32 L Ed 2d 212 (1972), for assistance in defining these terms. In *Kastigar,* use immunity is defined as immunity from "use of compelled testimony and evidence derived therefrom". *Kastigar, supra,* at 443. Transactional immunity is defined as "immunity from prosecutions for offenses to which compelled testimony relates".

Accepting these as working definitions, we next turn to the immunity order issued in the case before us to determine what kind of immunity Patterson received. The immunity order, in pertinent part, reads as follows:

" * * * [A]nd she shall thereafter be *held immune from any criminal prosecution growing out of the events about which she testifies* before the grand jury, as provided in CL 1948, section 767.19b, as amended by Public Act 1970, No 9." (Emphasis added.)

The language of this order is similar to that found in the immunity statute on which it relies, MCLA 767.19b; MSA 28.959(2), to wit:

"No person required to answer such questions shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him."

Patterson correctly points out that immunity granted pursuant to the above statute is transactional, not use, immunity. *In re Spalter,* 31 Mich App 458; 188 NW2d 67 (1971).[1] Moreover, the immunity order issued to Patterson clearly granted transactional immunity since it bars any criminal prosecution "growing out of" or relating to *(Kastigar, supra)* events about which she testifies. Thus Patterson was granted transactional immunity prior to answering questions before the grand jury.[2]

The final issue to be resolved is whether the transactional immunity granted her bars the instant prosecution. The people argue, following the opinion of the trial judge, that none of Patterson's testimony before the grand jury related to the instant prosecution, *i.e.,* incriminated her as to the bribes allegedly made in this case.

Patterson was asked and answered the following questions which are relevant to our inquiry when

---

[1] It is no doubt true that this statute provides for transactional immunity only because at the time of its enactment transactional immunity was constitutionally required. *In re Watson,* 293 Mich 263; 291 NW 652 (1940), *Counselman v Hitchcock,* 142 US 547; 12 S Ct 195; 35 L Ed 1110 (1872). It is now clear that grand jury testimony can be constitutionally extracted through imposition of the much narrower variant, use immunity. *Kastigar, supra.* The statute as written, however, still provides for transactional immunity. *Kastigar* does not amend the statute; that is for the Legislature.

[2] The suggestion is made that the trial judge's order granted Patterson use immunity rather than transactional immunity. Reliance is placed on the "growing out of" language employed in the order. We do not pause to construe this phrase. Nor do we consider whether, apart from the statute relied on, use immunity could have been granted by the trial court. In ordering immunity pursuant to MCLA 767.19b; MSA 28.959(2), the trial judge necessarily granted Patterson transactional immunity.

she appeared before the grand jury on February
23, 1972:

"*Q.* Did you pay money to anyone between July 1,
1967, and January 19, 1972, to a person who at the end
of said period operated out of the downtown headquar-
ters?

"*A.* I don't know what precinct he operated out of,
but I paid money to some police.

\* \* \*

"*Q.* Have you ever paid a police officer money on a
monthly assignment?

"*A.* Yes.

\* \* \*

"*Q.* How many police officers collected on a monthly
basis from you?

"*A.* Just two."

The people assert that this testimony does not
relate to the events out of which the instant
prosecution arose. They support that assertion in
two ways: First, by their own assurances that the
grand jury was only investigating "other" crimes
and, second, by Patterson's failure to specify the
individuals to whom she paid the money.

We cannot accept the prosecutor's *ex post facto*
version of what the questions were designed to
discover. The critical inquiry is not what the pros-
ecutor intended in asking the question but rather
what witness Patterson reasonably expected the
import of the question to be.

In a case which is quite similar to the present
one, the Supreme Court decided a given question is
potentially incriminating. In *People v Joseph,* 384
Mich 24; 179 NW2d 383 (1970), the defendant was
held in contempt for refusing to answer certain
grand jury questions. He based this refusal on his
Fifth Amendment privilege against self-incrimina-

tion. The Supreme Court was called upon to decide whether the questions which Joseph had refused to answer were potentially incriminating. Their inquiry focused on the following two questions:

"(2) Have you ever given any money, gift or gratuity or any other thing of value directly or indirectly or through any other person or persons to any candidate for a public or political office in the City of Detroit or the County of Wayne?

"(3) Have you ever made a political contribution to any candidate for public office in the State of Michigan?" *Joseph, supra,* at 27.

The prosecution argued in *Joseph,* as here, that the above questions were not incriminating because they did not require the witness to relate a specific payment to a specific individual. The Supreme Court rejected this argument, saying that an answer to the questions would have "provided an essential element of the offense of bribery". *Joseph, supra,* at 30. In addition, the Supreme Court—quoting the prosecutor's argument—held it irrelevant that the questions were not in the " 'context of a specific payment of money to a specific individual' ". *Joseph, supra,* at 31. The proper test to be applied is whether the witness has "reasonable cause to apprehend danger from a direct answer". *Joseph, supra,* at 29, quoting *Hoffman v United States,* 341 US 479; 71 S Ct 814; 95 L Ed 1118 (1951).

It seems clear to us that the fact that Patterson did not name the officers who collected the money and did not specify the dates on which payments were collected or the amounts thereof does not control. Her answers plainly provided an essential element of the offense of bribery, since she admitted paying money to police officers. *Joseph, supra,*

at 30. We are likewise convinced that Patterson had "reasonable cause to apprehend danger from a direct answer" to the questions posed.

Accordingly, her testimony related to the events forming the basis of the instant prosecution sufficiently to require the authorities to honor their promise to refrain from prosecuting her on the present charge. She was entitled to the full protection of the shield of immunity which compelled her to testify in the first place. Her conviction is reversed and she is ordered discharged.

Reversed.