*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 27, 2020

v

TIERRA CHARNESE SMITH,

Defendant-Appellant.

No. 345552
Wayne Circuit Court
LC No. 18-004365-01-FH

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions for assault with a dangerous weapon (felonious assault), MCL 750.82, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and malicious destruction of personal property (MDOP) $200 or more but less than $1,000, MCL 750.377a(1)(c)(*i*). Defendant was sentenced to 22 days for felonious assault, two years' imprisonment for felony-firearm, and two years' probation for MDOP. We affirm.

## I. PERTINENT FACTS AND PROCEEDINGS

In the early morning hours of March 24, 2018, defendant allegedly shot at the victim, Thomas McKinney. Prior to this night, McKinney and defendant had been best friends. However, earlier in the night they had gotten into an argument that led to the alleged shooting. Defendant, McKinney, and Jymeekah Jackson were at the home of Jackson's cousin, Jasmine.[1] Defendant had McKinney's car keys because she had driven McKinney's car to Jasmine's house, as McKinney was too drunk to drive. When it was time to leave Jasmine's house, McKinney asked for his keys, but defendant refused. When defendant continued to refuse, McKinney picked defendant up, body slammed her, and grabbed the keys. McKinney left defendant at Jasmine's house. Before he left, he overheard defendant on her phone describing to someone

---

[1] Jasmine's last name is not stated in the record.

McKinney's car and saying "come and shoot this n***er." On his way home, McKinney received a text from defendant saying "watch this, laughing my ass off."

Soon after, defendant arrived outside McKinney's apartment. McKinney testified that he looked out his window and saw defendant standing near his vehicle. He ran outside, and when he arrived at his vehicle, he noticed a candy bar shoved in his gas tank with the gas cap open. When he turned around, he saw defendant standing in the street with a gun. With her was a man, later identified as Christian Hill. McKinney testified that he asked defendant if she was going to shoot him, and defendant replied, "No, I want you to drop them . . . like you dropped me." McKinney then saw another man coming from around the other side of a car parked along the street. Once he realized that both men were approaching him and he observed defendant's "body language" and how she was "moving with the gun," McKinney started running. He testified that he heard two or three shots, although he acknowledged that he did not actually see defendant firing the gun. In contrast, defendant testified that she and her friend Hill, as well as a man named Anthony, went to McKinney's apartment so she could talk with him about the key incident. She denied having a gun or shoving a candy bar in McKinney's gas tank. McKinney came out of his home and was pacing back and forth and saying things "like there was goin' [sic] to be a fight." McKinney ran off when he realized defendant was not alone.

McKinney called 911, but defendant and the other men were gone by the time the police arrived. Officer Kevin Sims testified that when he arrived at the scene, he observed a candy bar shoved in McKinney's gas tank, as well a live bullet and a spent shell casing in the street where McKinney reported that defendant had been standing.

The defense had planned to call Hill to testify at trial that defendant did not have a gun at the scene. When the trial commenced, the prosecutor informed the court that she had just received the defense witness list with Hill's name on it, that Hill "apparently . . . drove the defendant to the scene of the incident," and that Hill may need an attorney because "he would have aided and abetted or possibly been an accessory to this crime." The court agreed to appoint Hill an attorney. After Hill consulted with his attorney, the court went on the record outside the presence of the jury. Hill's attorney indicated that he was recommending that his client not testify, as he believed Hill would incriminate himself in doing so. Hill was sworn in and testified that after consulting with his attorney, he was choosing not to testify. The trial court accepted Hill's invocation of his Fifth Amendment privilege against self-incrimination. The trial proceeded and defendant was convicted as previously indicated.

## II. FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

Defendant argues that the trial court erred in failing to ascertain the basis for Hill's invocation of the Fifth Amendment privilege against self-incrimination, and that this error deprived her of her right to present a defense. We disagree.

Because defense counsel did not object to either Hill's invocation of his privilege against self-incrimination or the trial court's decision to excuse Hill from testifying, this issue comes to the Court unpreserved. See *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992). We review unpreserved errors under the plain error rule. *People v Costner* 309 Mich App 220, 232; 870 NW2d 582 (2015). "To avoid forfeiture under the plain error rule, three

requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself or herself. *People v Wyngaard*, 462 Mich 659, 671; 614 NW2d 143 (2000) (citation and quotation marks omitted). "[T]he privilege cannot be invoked on a blanket basis." *United States v Castro*, 129 F3d 226, 229 (CA 1, 1997); quoted in *People v Gearns*, 457 Mich 170, 199 n 17; 577 NW2d 422 (1998), overruled in part on other grounds, *People v Lukity*, 460 Mich 484, 493-494 (1999). Rather, to assert the privilege, a witness must have "a reasonable basis . . . to fear incrimination from questions[.]" *People v Dyer*, 425 Mich 572, 579; 390 NW2d 645 (1986); see also *People v Seals*, 285 Mich App 1, 9; 776 NW2d 314 (2009). "This is not a particularly onerous burden. While chimerical fears will not suffice, the prospective witness need only limn some reasonably possibility that, by testifying, he may open himself to prosecution." *Castro*, 129 F3d at 229; see also *In re Grand Jury Proceedings No 93,164*, 384 Mich 24, 29; 179 NW2d 383 (1970) (observing that the privilege against self-incrimination does not "sanction every chimerical danger viewed by defendant as a link in the chain of evidence").

"[T]he witness is not the sole judge of whether the testimony is or may be incriminating," *Dyer*, 425 Mich at 578; rather, it "is for the court to say whether [a witness's] silence is justified," *In re Grand Jury Proceedings No 93,164*, 384 Mich at 29. "[T]he judge must hold a hearing outside the jury's presence to determine if the witness'[s] privilege is valid, explaining the privilege to the witness." *Gearns*, 457 Mich at 202. "If the court determines the assertion of the privilege to be valid, the inquiry ends and the witness is excused." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994). If the privilege is not valid, the court must determine whether the witness intends to continue to refuse to testify; if he or she so intends, contempt of court and removal should also take place, all of which must occur outside the jury's presence. *Gearns*, 457 Mich at 202.

Defendant contends that the trial court was "obligated to hold a hearing to determine the validity" of Hill's invocation of his Fifth Amendment right and to examine him "question-by-question to determine whether the answer to each question tended to incriminate [him]." Although we agree in principle with this proposition, we find no error under the circumstances presented here. When a potential witness asserts his privilege against self-incrimination, the trial court must determine whether the assertion is valid, which in part involves consideration of the scope of the privilege. See *In re Grand Jury Proceedings No 93,164*, 384 Mich at 29-32 (indicating that some of the one-man grand-jury's questions that the witness refused to answer were not incriminatory and subjected the witness to exercise of the court's power to punish contemptuous conduct). The witness does not have to prove the danger from testifying to the same extent that one has to establish a claim in court. To require this level of proof would compel the witness "to surrender the very protection which the privilege is designed to guarantee." *Id*. at 29. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id*. at 29-30.

Defendant cites no binding authority indicating how detailed a trial court's examination must be. Moreover, the unpublished opinions upon which she relies, *People v Spann*, unpublished per curiam opinion of the Court of Appeals, issued December 12, 2000 (Docket No. 211614), and *People v Morton*, unpublished per curiam opinion of the Court of Appeals, issued May 24, 2018 (Docket Nos. 339601; 339900), demonstrate that if the trial court possesses sufficient information to determine that the questions a defendant proposes to put to a potential witness would subject the witness to possible self-incrimination, no further examination is required. Where the trial court does not possess such information, further examination is required.[2]

After reviewing the record in the present case, we conclude that the trial court did not err in allowing Hill not to testify because the court possessed sufficient information to determine that he validly invoked the protections of the Fifth Amendment. As already indicated, the prosecutor observed at the start of the trial, outside the presence of the potential jurors, that Hill would need an attorney because he apparently had driven defendant to the scene, and his testimony might implicate him as an aider and abettor or accessory to the crime at issue. Defense counsel agreed that the court should appoint counsel for Hill. The court appointed Luther Glenn to represent Hill and then proceeded with the trial. McKinney was the first witness to testify. Immediately following McKinney's testimony, the court addressed whether Hill would invoke his right against self-incrimination. With Hill present, the court asked Glenn if he had had an opportunity to speak to Hill. Glenn indicated that he had and reported that, based on his confidential conversation with Hill, he believed Hill would incriminate himself if he testified, and recommended that Hill not testify. Glenn then asked Hill if he understood what Glenn had told the court and whether it was his intention to remain silent; Hill answered affirmatively to both questions. The trial court then had Hill sworn and asked him if he had spoken with Glenn and whether he had made the choice to not testify after talking with Glenn. Again, Hill answered affirmatively. The trial court then implicitly found Hill's invocation valid and excused him from testifying.

At the time the trial court made its decision to excuse Hill, the court knew that Hill had driven defendant to the scene of the incident and had been one of the men to approach McKinney after defendant said she wanted McKinney to "drop them . . .like he dropped her." The court also knew that Hill's behavior had contributed to McKinney's sense that he was in danger and his decision to flee the scene, that Hill's attorney had advised him not to testify, and that Hill had elected to take that advice. On the basis of what the trial court knew when it addressed Hill's assertion of the privilege, there was no doubt that Hill was "faced with some authentic danger of incrimination" should he testify about his presence at the incident at issue. *Castro*, 129 F3d at 229; see also *Dyer*, 425 Mich at 579 (finding a valid assertion because the witness's answering

_____

[2] In *Morton*, this Court remanded for a particularized inquiry because, at the time the trial court excused a prosecution witness from testifying about a murder in Michigan based on the witness' refusal to answer questions about a prior crime in Ohio, the court did not have sufficient information about the witness' involvement in the Ohio crime to determine if the witness validly invoked his right against self-incrimination.

any questions about his presence at the scene of the crime or the night of the defendant's arrest might have tended to incriminate him).

Defendant contends that, although Hill may have had a valid reason for asserting his Fifth Amendment privilege against self-incrimination, he asserted the privilege on a "blanket basis" and the trial court should have conducted a particularized inquiry to determine if Hill's assertion of the privilege was valid as to specific questions. However, defendant fails to identify any specific questions or lines of inquiry that would have provided substantive evidence without resulting in Hill's self-incrimination, directly or indirectly. Defense counsel sought Hill's testimony about the alleged shooting incident, and nothing in the record suggests that Hill was prepared to testify about anything other than what happened during the incident. However, both Hill and the trial court perceived that the nature of Hill's involvement in the incident—his presence and his conduct toward McKinney—could reasonably give rise to a charge of aiding and abetting if he testified and the jury found defendant guilty. In this regard, the instant case is similar to *Dyer*.[3]

*Dyer* involved in relevant part a res gestae witness, Michael Johnson, whose testimony, if believed, might result in an acquittal for the defendant, but might also expose Johnson to prosecution as the actual perpetrator of the charged crime. *Dyer*, 425 Mich at 573-578. The court appointed an attorney to represent Johnson and, after speaking with Johnson, the attorney informed the court that Johnson was going to invoke his Fifth Amendment right against self-incrimination. *Id*. at 574. The trial court then ruled that neither party could call Johnson as a witness. *Id*. This Court concluded that the trial court erred by excluding Johnson as a witness. Reversing this Court, the Michigan Supreme Court stated:

> We find that the trial court properly appointed counsel for Johnson and held an evidentiary hearing outside of the jury's presence in order to establish Johnson's intention to "plead the Fifth" on the record. We agree with the trial court and Johnson's counsel that answering any questions concerning the evening of defendant's arrest, even as to Johnson's presence at the scene of the crime, might have tended to incriminate Johnson. [*Id*. at 579.]

---

[3] *Dyer* did not address the type of inquiry a trial court must make to determine that a witness's invocation of the privilege against self-incrimination is valid. Rather, at issue in the case was whether the rule articulated in *People v Giacalone*, 399 Mich 642, 644-645;250 NW2d 492 (1977)—that a lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he or she will claim a valid privilege not to testify—applied equally to the defense and the prosecution. Thus, although the Supreme Court's agreement with the trial court and the witness's attorney that the witness's invocation of the Fifth Amendment protections was valid was arguably dictum, we deem it instructive to our analysis because it demonstrates the Supreme Court's thinking on the matter. See *People v Hock Shop, Inc*, 261 Mich App 521, 532; 681 NW2d 669 (2004) (noting that dicta can be instructive as illustrative of how a court reaches its conclusions).

In the present case, the trial court appointed an attorney for Hill and, after the attorney spoke with Hill, held a brief hearing out of the jury's presence and determined Hill's intention to "plead the Fifth" on the record. Because defendant sought Hill's testimony regarding the incident giving rise to the charges against defendant, answering any questions about his presence at the incident would have tended to incriminate him. See *id*.; see also *Castro*, 129 F 3d at 229 ("testimony which might lead indirectly or directly to evidence that then could be used in a future criminal prosecution is eligible for Fifth Amendment protection.").

In light of what the trial court knew when the court excused Hill from testifying, the nature of the testimony defendant sought from Hills, and the specific scope of Hill's assertion of the constitutional privilege against self-incrimination, we cannot say that the trial court plainly erred by not conducting a more detailed inquiry. Accordingly, defendant has failed to meet her burden to establish plain error affecting her substantial rights. See *Carines*, 460 Mich at 763.

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor improperly threatened Hill with prosecution to prevent him from testifying on Defendant's behalf, and that statements the prosecutor made during her opening statement, closing argument, and rebuttal argument amounted to prosecutorial misconduct. We find no error. Because defendant failed to object to any of the alleged instances of prosecutorial conduct, this issue is unpreserved and, as indicated above, our review is for plain error affecting defendant's substantial rights. *Id*.

"[A] prosecutor's role and responsibility is to seek justice and not merely convict[.]" *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Therefore, "the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Seals*, 285 Mich App at 22.

### A. WITNESS INTIMIDATION

"The Michigan Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses." *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003). "Attempts by the prosecution to intimidate witnesses from testifying, if successful, amount to a denial of a defendant's constitutional right to due process of law." *Id*. However, "under certain circumstances, the prosecutor, as an officer of the Court, has a duty to inform the Court that it may be necessary for the Court to inform a witness of his rights under the Fifth Amendment." *People v Callington*, 123 Mich App 301, 306-307; 333 NW2d 260 (1983). This may be necessary because, "[u]sually, a trial judge has no knowledge of the content of a proposed witness's testimony." *Id*. at 307. The *Callington* Court further asserted:

> [W]e feel it is a better practice for the prosecutor to inform the Court, in the
> appropriate case, out of the presence of the witness, of the possible need for a

witness to be informed of his or her rights under the Fifth Amendment. The prosecutor should further state the basis for such a request and the trial judge shall exercise his discretion in determining whether such warnings should issue. [*Callington*, 123 Mich App at 307.]

Defendant's claim of witness intimidation arises from the following statement by the prosecutor to the court at the beginning of the first day of trial:

I was just provided with defense counsel's witness list and on that witness list is a Mr. Christian Hill. And apparently, Mr. Christian Hill, drove the defendant to the scene of the incident . . . where the victim states that the shooting occurred and as a witness for the defense that would be an issue because he would need an attorney, because he would have aided and abetted or possibly been an accessory to this crime.

After the prosecutor informed the court that Hill may need to be informed of his Fifth Amendment privilege, defense counsel noted that Hill was in the courtroom. Defendant argues that the prosecution had been aware of Hill's presence at the scene since the inception of the case, but waited until the day of trial, when Hill intended to provide exculpatory evidence, to threaten to charge Hill with a crime. We are not persuaded.

First, it is not clear from the record whether the prosecutor knew Hill was in the courtroom when she initially made the statement. There is no indication that the prosecutor spoke directly to Hill, or that she intended to threaten Hill. Rather, consistent with the procedure set forth in *Callington*, the prosecutor informed the court that Hill may need an attorney to advise him of his Fifth Amendment rights and then set forth the basis for such request.[4]

The record does not support defendant's assertion that the prosecution waited until it discovered that Hill was going to provide exculpatory evidence before allegedly threatening to charge him. The record does not clearly indicate how long, or even if, the prosecution had been aware of Hill's identity or his presence at the scene of the crime. At the start of trial, the prosecutor stated that she had "just [been] provided with defense counsel's witness list," which included Hill. Nothing in the record calls into question the veracity of this statement. At the final pretrial conference approximately two weeks before trial, defense counsel stated that its only witness, at that point in time, was defendant. The lower court record does not include any reference to Hill or any indication that the prosecution was aware that he was the person accompanying defendant. Although McKinney reported to the police on the night of the incident that defendant was with two men, at trial, McKinney testified that he did not know who the men

_____

[4] Although the *Callington* court preferred prosecutors to inform the court of the potential that a witness would need an attorney outside the presence of witnesses, it cannot be said that the prosecutor in the present case reversibly erred by failing to do so. Witnesses who find themselves in such situations are bound to find out why their testimony may be eligible for Fifth Amendment protection.

were and he had never met Hill before. Detective Kristen Ferency, the officer in charge of this case, did not question Hill, and there is no indication that she was aware of his presence at the scene. Thus, there simply is no evidence in the record to indicate that the prosecutor was aware of Hill at the inception of this case and purposely waited until the day of trial to warn Hill in an attempt to intimidate him into not testifying.

We conclude upon review of the record that the prosecutor's statement did not amount to misconduct. Rather, the prosecutor was fulfilling a duty to inform the court that Hill may need to be advised of his right against self-incrimination, and why. See *Callington*, 123 Mich App at 307.

## B. IMPROPER STATEMENTS

To determine whether a prosecutor's statements were improper, this Court examines the entire record to evaluate the prosecutor's remarks in context, and the remarks must be examined in light of the defense's arguments and the relationship they bear to the evidence. *Dobek*, 274 Mich App at 63.

At the start of the prosecutor's opening statement, she asserted:

Good morning, ladies and gentlemen of the jury. And thank you in advance for your time and attention to this matter on both [sic] behalf of the People and defense counsel.

On March 24, 2018 as the Judge has already told you, the defendant, Ms. Tierra Smith shot at her friend. And thank goodness she's a horrible shot, because you all would be here to decide a homicide if her shots had taken effect. So, again, thank God, she's a horrible shot.

Defendant argues that the statement, "as the Judge has already told you, the defendant, Ms. Tierra Smith shot at her friend," improperly implied to the jury that the trial judge had already decided that defendant shot at McKinney.

Reviewing this statement in context does not support defendant's claim of prosecutorial misconduct. During jury selection, the judge explained to the jury that the charging document was known as the information. When the judge recounted to the jury the following, she explained that she was reading from the information:

Okay. On March 24th, 2018, Ms. Smith was at the address of 2556 West Philadelphia Street in the City of Detroit and that is she did commit an assault upon a Thomas Lee McKinney with a dangerous weapon, to wit a handgun but without intending to commit the crime of murder or to inflict great bodily harm less than the crime of murder or to inflict great bodily harm less than the crime of murder and that she did carry or have in her possession a firearm, to wit a handgun, at the time she committed or attempted to commit the felony, to wit felonious assault and that she did willfully and maliciously destroy or injure car

[sic] the personal property of Thomas Lee McKinney in the amount of destruction or injury was $200 or more but less than a thousand.

The defendant has not pled guilty to these charges. You should clearly understand that the information I have just read is not evidence. An information is read in every criminal trial so that the defendant and jury can hear the charges. You must not think it is evidence . . . of her guilt or that she must be guilty because she had been charged.

Considering all comments in context, when the prosecutor said, "as the Judge has already told you, the defendant, Ms. Tierra Smith shot at her friend," she was likely restating the prosecution's view of the case, which had already been told to the jury when the judge read the information. However, assuming, arguendo, that the prosecutor's statement was meant to convey that the judge had already found that defendant shot at McKinney, the statement would have been improper.

But even assuming that the prosecutor's statement was improper, defendant has failed to establish that the error affected the outcome of the trial. The trial court made it clear to the jury throughout the trial that neither the judge's comments nor the prosecutor's comments were evidence and that defendant was presumed innocent until proven guilty.

Right after the trial court read the information and informed the jury that the charges do not mean she is guilty, the judge informed the jury that defendant is presumed innocent, and that this presumption continued throughout the trial and entitled her to an acquittal unless the jury was "satisfied beyond a reasonable doubt that she is guilty." The trial court repeated this instruction at the end of trial, prior to jury deliberations.

In addition, the trial court instructed the jury multiple times that the neither the judge's nor the attorneys' statements were evidence. As noted above, prior to jury selection, the trial court explained to the jurors after reading the information that they "should clearly understand that the information I have just read is not evidence." Just prior to opening statements, the trial court also instructed the jury that the prosecutor was going to give an opening statement, and "[t]hese statements are not evidence. They are only meant to help you understand how each side views the case." The court also explained that the closing arguments are not evidence. The trial court reiterated prior to the jury deliberating that the fact that defendant is charged with a crime and on trial is not evidence, the attorneys' statements and arguments are not evidence, and the judge's comments, rulings, questions, and instructions are not evidence. Because jurors are presumed to follow their instructions, *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), defendant has failed to show that the prosecutor's statement affected the outcome of the trial.

Defendant also argues that the prosecutor committed misconduct when she called defendant and Jackson liars during closing and rebuttal arguments. During closing argument, the prosecutor referred to defendant and Jackson as liars, stating, "[y]ou heard the liars, yesterday [Jackson] and [defendant]. Defense wants you to believe that [McKinney] started this entire thing. He was mad he body slammed her. No. She's the agitator." During the prosecutor's rebuttal argument, she stated the following:

She's the one who is lying to you all. She's not going to tell the truth. She's not going to say my friend came over and went to my other friend's house to shoot him. She's not going to tell you that. She has lied, she brought her friend here to lie, but now it's time for you all to determine the truth.

In *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997), the defendant argued that the prosecutor improperly characterized him as a liar. This Court held that a "prosecutor may . . . argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *Id*. The *Howard* Court concluded that it had not been improper to call the defendant a liar because "the challenged remarks regarding [the] defendant were made in reference to the testimony and evidence presented at trial. The prosecutor was advancing his position that various claims made by [the] defendant were not credible in light of contradictory evidence adduced at trial." *Id*.

Evaluating these statements in their context, the prosecutor's remarks were made in reference to testimony and evidence presented at trial. The prosecutor made her comment that both defendant and Jackson were liars as part of her argument rebutting the defense's implication that McKinney was the agitator and that defendant only went to McKinney's house to speak to him. The prosecutor's rebuttal comment, that defendant was "the one who's lying," was made while discussing the inconsistency between McKinney's and defendant's testimony regarding whether shots were fired at the scene. Thus, the prosecutor's challenged remarks were made in reference to the evidence presented at trial. See *Howard*, 226 Mich App at 548. Therefore, the prosecutor's statements were not improper.

Even if the prosecutor's statements were improper, defendant has failed to establish that the statements affected the outcome of the trial. As discussed above, the trial court thoroughly instructed the jury that the prosecutor's statements and arguments were not evidence. Because jurors are presumed to follow their instructions, *Mahone*, 294 Mich App at 212, it cannot be said that the prosecutor's statements affected the outcome of the trial.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that trial counsel was ineffective for failing to object to the prosecutor's threat to Hill and for failing to object when the prosecutor stated that the trial court had already decided that defendant shot McKinney. We disagree with both of defendant's claims of ineffective assistance of counsel. Because defendant did not move for a *Ginther*[5] hearing or a new trial, our review is for errors apparent on the record. *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). This Court reviews de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), vacated not in relevant part, 493 Mich 864 (2012), cert den sub nom *Gioglio v Michigan*, 568 US 1217 (2013).

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

To prevail on a claim of ineffective assistance of counsel, defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). There is also a "strong presumption that counsel's performance was born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This presumption can only be overcome by a showing of counsel's failure to perform an essential duty, which failure was prejudicial to the defendant." *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989).

## A. FAILURE TO OBJECT TO THE PROSECUTOR'S ALLEGED INTIMIDATION OF HILL

Defendant argues that trial counsel was ineffective for failing to object to the prosecutor's threat that if Hill testified he could be charged with a crime. In our view, the prosecutor's statement did not warrant an objection. As discussed above, the prosecutor acted in compliance with her duty to inform the court of a possible self-incrimination issue and generally following proper procedure. Although it might have been a better practice to raise this issue out of the presence of any witnesses, *Callington*, 123 Mich App at 307, nothing in the record suggests that the prosecutor was directing her statement at Hill, or that she even knew Hill was in the courtroom. Under these circumstances, an objection by trial counsel to the prosecutor's statement likely would have been futile, and "[t]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Moreover, even if counsel's failure to object did constitute deficient performance, defendant cannot establish prejudice based on the prosecutor's comment. The record shows that Hill validly invoked his privilege against self-incrimination after consultation with his court-appointed lawyer and after consideration of the incriminatory potential of his testimony. Thus, it was the potential consequences of Hill's involvement in the incident that prompted his decision to not testify; not the prosecutor's articulation of those potential consequences.[6]

---

[6] Defendant raises in her statement of questions presented the issue of whether defense counsel rendered ineffective assistance by failing to object to Hill's alleged invalid invocation of the privilege against self-incrimination. However, defendant fails to provide any authority or argument regarding how defense counsel's failure to object constituted deficient performance that affected the outcome of the proceeding. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (citation and quotation marks omitted). Moreover, in light of our conclusion that the trial court properly concluded that Hill's invocation was valid, any objection by defense counsel likely would have been futile. See *Fike*, 228 Mich

-11-

## B. FAILURE TO OBJECT TO THE PROSECUTOR'S COMMENT DURING OPENING STATEMENTS

Defendant next contends that trial counsel was ineffective for failing to object to the prosecutor's implication during her opening statement that the trial judge had already decided that defendant shot McKinney. Defendant contends that this was a highly prejudicial statement because it came at the start of trial when defendant was supposed to be considered innocent until proven guilty.

As previously discussed, viewing the prosecutor's statement in its context, the prosecutor appears to have been indicating to the jury that she was restating the prosecution's view of the case that the trial court had conveyed to the jury in the court's prior reading of the information. Viewed accordingly, the prosecutor's statement was not improper, and it would have been futile for defense counsel to object. *Fike*, 228 Mich App at 182.

Even if an objection would have been proper, counsel might have elected to refrain from objecting so that the jury's first impression of him was not of a combative and off-putting personality, to the prejudice of defendant. See *People v* Unger, 278 Mich App 210, 242; 253 NW2d 272 (2008) (indicating that trial counsel can reasonably decline to object as a matter of trial strategy). Thus, even if the prosecutor's statement was improper, defendant has failed to establish that trial counsel's performance fell below an objective standard of reasonableness. See *Trakhtenberg*, 493 Mich at 51.

Moreover, even if trial counsel's failure to object to this statement was objectively unreasonable, defendant has failed to establish a reasonable probability that it affected the outcome of the trial. The trial court instructed the jury twice that a person accused of a crime is innocent until proven guilty, that the prosecutor's opening statement was not evidence, and that statements or arguments by the attorneys are not evidence. The jurors are presumed to have followed these instructions. *Mahone*, 294 Mich App at 212. Thus, defendant has failed to establish that trial counsel's failure to object to this statement constituted ineffective assistance of counsel.

## V. CURATIVE INSTRUCTION

Defendant next argues that she was denied a fair trial when the trial court gave an improper curative instruction in an attempt to remedy an incorrect jury instruction. We disagree.

---

App at 182. To be clear, we are not concluding that defendant cannot prove ineffective assistance of counsel because she failed to establish that the trial court plainly erred in allowing Hill to not testify. See *People v Randolph*, 502 Mich 1, 10-16; 917 NW2d 249 (2018). Rather, we conclude that defendant has failed to establish ineffective assistance with regard to counsel's failure to object to the trial court's excusing Hill from testifying because she has failed to point to any record facts that would allow us to conclude that defense counsel performed below an objective standard of reasonableness under the circumstances. See *Trakhtenberg*, 493 Mich at 51.

To preserve an instructional error for review, a defendant must object to the instruction or request a particular jury instruction before the jury deliberates.  MCR 2.515(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003), disapproved on other grounds 469 Mich 967 (2003).  Defense counsel did not object to the oral or written jury instructions.  Defense counsel did not object to the curative instruction given by the trial court, and defense counsel specifically stated that he was satisfied with the curative instruction.

This Court generally reviews claims of instruction error de novo.  *Dobek*, 274 Mich App at 82.  However, defense counsel did not object to the oral or written instructions to the jury or to the court's curative instruction.  "[B]y expressly and repeatedly approving the jury instructions on the record, defendant [waives] any objection to the erroneous instructions, and there is no error to review."  *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).  Accordingly, this issue is waived.

Even if defendant had not waived this issue, we would not find fault with the trial court's curative instruction.  Although the court properly instructed the jury orally, there is no doubt that the written instructions provided the jury were erroneous.  Defendant had been charged with felonious assault, but the written instructions included a section of text stating that the jury could find defendant guilty of "felonious assault instead of felonious assault with a dangerous weapon."  The jury was rightly confused by this text and twice sought clarification from the trial court.  After receiving the second note from the jury asking for clarification, the court reviewed the written instructions, realized the error, and explained her proposed resolution to the prosecutor and defense counsel.  The court then brought the jury back to the courtroom and explained to the jury in relevant part:

> The portion where it says, "You may also consider the lesser charge of," should have been redacted out of the jury instructions.  The defendant is only charged with the crime of felonious assault.  The second portion would only apply if there were greater charges.  There are more serious charges and they're able to consider felonious assault as an alternative to a more serious charge.  And I hope that answers your question.  And I guess that is—if there are any more questions, you may write them on a piece of paper.  But if that satisfies it we can release you back to the jury room.
>
> So for all, as you go forward, please don't consider you may also [sic] the lesser charge of, there are no lesser charges.  Those are the only charges that were brought forth.

Objectively considered, the trial court clearly and concisely resolved the jury's confusion by indicating that defendant was charged with felonious assault only, and that there were no lesser charges to consider.  The jury did not submit any further questions.  Thus, even if defendant had not waived this issue by repeatedly and expressly approving the instructions and the curative instruction, we would nevertheless conclude that the trial court's curative instruction properly informed the jury of the charge against defendant.

## VI. CUMULATIVE ERROR

Finally, defendant contends that all of the errors, taken cumulatively, denied her of a fair trial. We disagree. Because this issue was not preserved, this Court's review is for plain error affecting substantial rights. *Carines*, 460 Mich at 767.

"The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not." *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003). "To warrant reversal based on cumulative error, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Schrauben*, 314 Mich App 181, 193; 886 NW2d 173 (2016) (quotation marks and citation omitted). Having found no errors, we do not find reversal warranted.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens